1 | David S. Torborg (*pro hac vice*)
dstorborg@jonesday.com
2 | Daniel T. Moss (*pro hac vice*)
dtmoss@jonesday.com
3 | JONES DAY
51 Louisiana Avenue, N.W.
4 | Washington, D.C. 20001-2113
Telephone: (202) 879-3939
5 | Facsimile: (202) 626-1700

6 | Joshua M. Mester (SBN 194783)
jmester@jonesday.com
7 | JONES DAY
555 South Flower Street
8 | Fiftieth Floor
Los Angeles, CA 90071.2452
9 | Telephone: (213) 489-3939
Facsimile: (213) 243-2539

10 |

*Attorneys for Minsheng Business Aviation Limited*

11 |

**UNITED STATES BANKRUPTCY COURT**
12 | **CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

13 |

| | |
|---|---|
| In re: | Lead Case No. 2:17-bk-21386-SK |
| ZETTA JET USA, INC., a California corporation, | (Jointly administered with 2:17-bk-21387-SK) |
| Debtor. | Chapter 7 Cases |
| | Adv. Proc. No. 2:19-ap-01383-SK |
| In re: | **DEFENDANT MINSHENG BUSINESS AVIATION LIMITED'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS II, VI, VII, XI, XII, AND XV OF ADVERSARY COMPLAINT** |
| ZETTA JET PTE LTD., a Singaporean corporation, | |
| Debtor. | |
| | Date: TBD |
| | Time: TBD |
| JONATHAN D. KING, solely in his capacity as Chapter 7 Trustee of Zetta Jet USA, Inc. and Zetta Jet PTE, Ltd., | Place: Courtroom 1575 |
| | 255 East Temple Street |
| | Los Angeles, Ca 90012 |
| Plaintiff, | Judge: Hon. Sandra R. Klein |
| v. | |
| YUNTIAN 3 LEASING COMPANY LIMITED DESIGNATED ACTIVITY COMPANY f/k/a YUNTIAN 3 LEASING COMPANY LIMITED, YUNTIAN 4 | |

1  LEASING COMPANY DESIGNATED
   ACTIVITY COMPANY f/k/a YUNTIAN 4
2  LEASING COMPANY LIMITED,
3  MINSHENG FINANCIAL LEASING CO.,
   LTD., MINSHENG BUSINESS AVIATION
4  LIMITED, EXPORT DEVELOPMENT
   CANADA, LI QI, UNIVERSAL LEADER
5  INVESTMENT LIMITED, GLOVE ASSETS
   INVESTMENT LIMITED, and TRULY
6  GREAT GLOBAL LIMITED,

7       Defendants.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **TO THE HONORABLE SANDRA R. KLEIN, UNITED STATES BANKRUPTCY**

2   **JUDGE, AND TO PLAINTIFF'S COUNSEL OF RECORD:**

3        **PLEASE TAKE NOTICE** that Defendant Minsheng Business Aviation Limited

4   ("Minsheng Business") will and hereby does move (by this "Motion") the Court to dismiss,

5   without leave to amend, Counts II, VI-VII, XI-XII, and XV (as to claims pled against Minsheng

6   Business) in the complaint (the "Complaint") filed in the above-captioned adversary proceeding,

7   for failure to state a claim upon which relief can be granted, because the Complaint insufficiently

8   pleads the facts necessary to plausibly state claims for relief for fraudulent transfer, preference,

9   turnover, and disallowance of claims under the avoidance provisions of title 11 of the United

10  States Code (the "Bankruptcy Code"). The Complaint must also be dismissed because it

11  impermissibly seeks the extraterritorial application of the Bankruptcy Code's avoidance

12  provisions and violates principles of international comity.

13       **PLEASE TAKE FURTHER NOTICE** that this Motion is being brought under Rules

14  12(b)(6), 8(a) and 9(b) of the Federal Rules of Civil Procedure (the "Federal Rules" or "Rules"),

15  as made applicable under Rules 7012, 7008, and 7009 of the Federal Rules of Bankruptcy

16  Procedure (the "Bankruptcy Rules"), and is based on the accompanying memorandum of points

17  and authorities, the Court's files in this adversary proceeding, and the related Chapter 7 case, and

18  such other evidence and argument as may properly come before this Court at any hearing.

19       **PLEASE TAKE FURTHER NOTICE** that, pursuant to the *Order Approving*

20  *Stipulation for Filing and Briefing Schedule on the Yuntian and Minsheng Defendants' Motions*

21  *to Dismiss Adversary Complaint*, Dkt. No. 40, written responses to this Motion must be filed by

22  January 31, 2020.

23       **WHEREFORE**, Minsheng Business respectfully requests that the Court enter an order (i)

24  granting the Motion, (ii) dismissing, without leave to amend, each claim for relief in the

25  Complaint against Minsheng Business for failure to state a claim upon which relief can be

26  granted, and (iii) granting any and all other relief the Court deems just and necessary.

27

28

1   Dated: December 20, 2019

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JONES DAY

*/s/ Daniel T. Moss*
Daniel T. Moss (*pro hac vice*)
dtmoss@jonesday.com
David S. Torborg (*pro hac vice*)
dstorborg@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

Joshua M. Mester (SBN 194783)
jmester@jonesday.com
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071.2452
Telephone: (213) 489-3939
Facsimile: (213) 243-2539

# TABLE OF CONTENTS

**FACTUAL BACKGROUND** ..................................................................................................... 2

**ARGUMENT** ........................................................................................................................ 3

I.  The Presumption Against Extraterritoriality And International Comity Require Dismissal Of All Claims. ................................................................................................................ 3

II.  The Trustee Has No Basis To Avoid Any Part Of The $12.4 Million Transfer Because It Did Not Involve The Debtor's Property. ....................................................................... 4

III.  The Trustee Has Failed To Adequately Plead His Fraudulent Transfer Claims. .................... 5

IV.  The Trustee Has Failed To Adequately Plead His Preference Claims. ................................... 5

V.  The Trustee Has Failed To Adequately Plead His Turnover Claims, Which In Any Event Fail As A Matter Of Law. ........................................................................................ 6

VI.  The Trustee's Request For Disallowance Under Section 502 Fails Under Rule 12(B)(6). ...... 7

**CONCLUSION** ..................................................................................................................... 7

# TABLE OF AUTHORITIES

Statutes

11 U.S.C. § 502(d) ........................................................................................................................ 7

11 U.S.C. § 1110 ....................................................................................................................... 3, 7

Other Authorities

Fed. R. Bank. P. 7009 ................................................................................................................... 1

Fed. R. Bank. P. 7012(b) .............................................................................................................. 1

Fed. R. Civ. P. 8(a) ....................................................................................................................... 5

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 1, 7

Fed. R. Civ. P. 9(b) ................................................................................................................... 1, 5

1            **MEMORANDUM OF POINTS AND AUTHORITIES**

2        In accordance with Federal Rules  12(b)(6) and 9(b) and Bankruptcy Rules 7012(b) and

3 7009(b), defendant Minsheng Business Aviation Limited ("Minsheng Business") moves to

4 dismiss each of the claims asserted against it in this Adversary Proceeding. In particular, this

5 motion seeks dismissal, as to Minsheng Business, of Counts II, VI-VII, XI-XII, and XV for

6 failure to state a claim on which relief may be granted.

7                **PRELIMINARY STATEMENT**

8        Minsheng Business, a Chinese entity with its principal place of business in Hong Kong, is

9 affiliated with defendants Yuntian 3 Leasing Company Limited Designated Activity Company

10 and Yuntian 4 Leasing Company Designated Activity Company (collectively the "Yuntian

11 Entities"), *see* Compl. ¶¶ 41-44, which submitted their own motion to dismiss the Complaint and

12 memorandum of supporting points and authorities on December 9, 2019. *See Defendants Yuntian*

13 *3 Leasing Company Limited Designated Activity Company and Yuntian 4 Leasing Company*

14 *Designated Activity Company's Notice of Motion and Motion to Dismiss Counts II, III, VI, VII,*

15 *IX, X, XI, XII, and XV of Adversary Complaint* (the "Yuntian Motion"), Dkt. No. 32. Undersigned

16 counsel represents both Minsheng Business and the Yuntian Entities for purposes of this

17 Adversary Proceeding.[1]

18        As is evident from the Yuntian Motion, each the substantive arguments raised in the

19 Yuntian Motion apply with full force to the Trustee's claims asserted against Minsheng Business.

20 This includes arguments relating to extraterritoriality and comity; the Trustee's inability to seek

21 recovery of funds that were never property of a Debtor (including the $12.4 Million Transfer

22 addressed in the Yuntian Motion); and the Complaint's failure to plead the requisite elements of

23 fraudulent transfer, preference, turnover, and disallowance claims in compliance with Rules 8 and

24 9(b), as well as certain other legal deficiencies inherent in those claims. To avoid duplication of

25 arguments and supporting authorities, this Motion expressly incorporates by reference the

26 Yuntian Motion, as well as the declarations of Messers. Richmond and Nair [Dkt. No. 32, Exs. A

27 _____

28       [1] Capitalized terms not otherwise defined herein shall have the definitions ascribed to them in
the Yuntian Motion.

1  & B] (together, the "Foreign Law Declarations") and the Declaration of David S. Torborg [Dkt.

2  No. 33] ("Torborg Decl.") filed in support of that filing.

3      For the reasons provided in the Yuntian Motion, each of the avoidance and turnover

4  claims that the Trustee, acting on behalf of Zetta Singapore and Zetta USA, has asserted against

5  Minsheng Business are baseless and should be dismissed in their entirety. This Motion briefly

6  highlights and reiterates how the arguments raised in the Yuntian Motion likewise warrant

7  dismissal of all claims against Minsheng Business.

8                    **FACTUAL BACKGROUND**

9      As set forth in the Yuntian Motion, the Yuntian and Minsheng Entities played a limited

10  role in the Zetta Jet story. They were involved in sale and leasing transactions involving (1) two

11  Zetta Jet "Global 6000" airplanes (referred to as Plane 6 and Plane 7 in the Complaint) and (2)

12  four new "Challenger" aircraft, of which one was actually delivered (referred to as Plane 12 in the

13  Complaint). *See* Yuntian Motion at 4-10. Zetta Singapore's founder and Managing Director,

14  Geoff Cassidy, approached Minsheng in mid-2016 with an interest in potential sale and leasing

15  transactions involving Planes 6 and 7, as well as new Challenger Aircraft. *See* Compl. ¶¶ 98-111,

16  119.

17      As to Minsheng Business in particular, Zetta Singapore provided Minsheng Business a $2

18  million good will payment on July 20, 2016 (the "$2 Million Goodwill Payment").[2] On

19  September 19, 2016, in anticipation of closing and after due diligence was completed, Minsheng

20  Business transferred two $40 million payments to IATS, an escrow agent used for the purchase of

21  Planes 6 and 7. *See* Torborg Decl., Exs. P & Q. When the sale of Planes 6 and 7 closed on

22  September 21, 2016, Minsheng Business was paid $12.4 million pursuant to the payment

23  instructions provided in the closing documents. *See* Torborg Decl., Exs. L &M.[3] On September

24  23, 2016, Minsheng Business used the $12.4 million that was immediately "round-tripped" back

25      [2] The $2 Million Goodwill Payment was made from Zetta Singapore's HSBC bank account in

26  Singapore to Minsheng Business' bank account in Hong Kong, while the September payments were
    made from Zetta Singapore's HSBC account in Singapore to Yuntian 3's bank account in Ireland. *See*

27  Torborg Decl., Exs. N & O.

    [3] The $12.4 million was earmarked for payment of fees and down payments and deposits for

28  the four Challenger Aircrafts.

1   to it to pay fees and down payments and deposits for the four new Challenger Aircraft.

2   Ultimately, however, Zetta Jet cancelled its orders for the three Undelivered Aircraft on

3   September 7, 2017, and otherwise defaulted under the agreements for Planes 6, 7, and 12. *See*

4   Yuntian Motion at 8-9. On November 29 and 30, 2017, the Yuntian Entities repossessed Planes 6,

5   7, and 12, exercising their rights under Section 1110 of the Bankruptcy Code.

6   The Trustee seeks to avoid the $2 Million Goodwill Payment and $12.4 Million Transfer

7   as fraudulent transfers through Counts II and VI.  The Trustee also seeks the turnover of any

8   "profit" made on the resale to third parties of the Plane 12 and the Undelivered Aircraft through

9   Count VII and XI.  Finally, Minsheng Business is one of many defendants from which the

10   Trustee seeks to recover certain "Legal Fee Payments" as preference transfers pursuant to Count

11   XII.

12   As detailed more thoroughly in the Yuntian Motion, and summarized herein, each of the

13   Trustee's claims against Minsheng Business fail as a matter of law and should be dismissed

14   **ARGUMENT**

15   **I.   THE PRESUMPTION AGAINST EXTRATERRITORIALITY AND**
16   **INTERNATIONAL COMITY REQUIRE DISMISSAL OF ALL CLAIMS.**

17   A threshold issue warrants dismissal of each of the fraudulent transfer and preference

18   claims made against Minsheng Business: the Bankruptcy Code's avoidance provisions cannot

19   apply extraterritorially to transactions that are overwhelmingly foreign in nature. *See* Yuntian

20   Motion at 12-22. The Trustee makes no effort to connect the indisputably foreign transactions

21   involving Minsheng Business that he seeks to avoid (principally, the $2 Million Goodwill

22   Payment and the $12.4 Million Transfer) to the United States. That is understandable.

23   As noted above, the $2 Million Goodwill Payment was paid by a Singapore entity (Zetta

24   Singapore) through a Singapore bank account to a Chinese entity based in Hong Kong (Minsheng

25   Business). The payment was made to Minsheng Business's Hong Kong-based bank account.  The

26   $12.4 Million Transfer was paid by Minsheng Business (a foreign entity) to itself, with a short

27   stop at an escrow agent. As detailed in the Yuntian Motion, the $12.4 Million Transfer's fleeting,

28   two-day connection to a U.S.-based escrow agent is immaterial. *See* Yuntian Motion at 15-16.

1  Likewise, the Legal Fee Transfers allegedly paid by Zetta Singapore in connection with the sale

2  and leaseback transactions involved what were inherently foreign transactions.

3       Alternatively, use of the Bankruptcy Code's avoidance provisions here is precluded by

4  principles of international comity. As described in the Foreign Law Declarations, there are

5  significant and particularly relevant differences between U.S., Singapore (the center of activity

6  for the transactions at issue), and English law applicable to the Trustee's claims. Further, the

7  Trustee previously acknowledged that he may have to adjudicate his claims in Singapore under

8  Singapore law since "numerous transfers were made out of or through Zetta Singapore's bank

9  accounts located in Singapore." Dkt. No. 89 ¶ 14 in case no. 2:17-bk-21386-SK ("BK Dkt"). As a

10  result, the Trustee's claims should be dismissed.

11  **II.     THE TRUSTEE HAS NO BASIS TO AVOID ANY PART OF THE $12.4 MILLION
12  TRANSFER BECAUSE IT DID NOT INVOLVE THE DEBTOR'S PROPERTY.**

13       Counts II and VI seek to recover, from either Minsheng Business or Yuntian 4, the $12.4

14  Million Transfer that the Complaint alleges was fraudulently "transferred" to Minsheng Business.

15  The Trustee's claims to the $12.4 million should be dismissed for the independent reason that

16  such funds did not involve the Debtor's property and in any event were earmarked for a specific

17  purpose. *See* Yuntian Motion at 22-24. The funds indisputably came *from Minsheng Business* (not

18  Zetta Singapore or Zetta USA) and were earmarked, per the terms of the payment instructions for

19  the distribution of the $80 million in proceeds generated from the sale and lease of Planes 6 and 7,

20  to Minsheng Business through an escrow agent in order "to pay fees and down payments and

21  deposits of four Bombardier Challenger aircraft." Compl. ¶ 106. The Debtor never possessed or

22  controlled the $12.4 million funds.  Any suggestion these funds involved "a transfer of Zetta

23  PTE's property," Compl. ¶¶ 194, 241, is specious.

24       Therefore, Count II should be dismissed to the extent it seeks recovery of the $12.4

25  Million Transfer, and Count VI should be dismissed entirely.

26

27

28

### III. THE TRUSTEE HAS FAILED TO ADEQUATELY PLEAD HIS FRAUDULENT TRANSFER CLAIMS.

The Trustee's fraudulent transfer claims (Counts II and VI)—which among other things seek recovery of the $2 Million Goodwill Payment and the $12.4 Million Transfer—should also be dismissed. The Complaint fails to plead *facts* sufficient to support either claims for actual or constructive fraudulent transfer. *See* Yuntian Motion at 24-31. The Trustee's actual fraudulent transfer claims do not meet the minimum pleading standards under Federal Rule 8(a). Nor does the Trustee make any effort to apply the "badges of fraud" generally required by Rule 9(b) to support his actual fraudulent transfer claims. This failure cannot be excused by any reliance on the so-called "Ponzi scheme presumption," as the Debtors' operations do not remotely resemble "Ponzi" or "Ponzi-like" schemes. *See id*. at 26-29.[4] And even if the Ponzi scheme presumption were applied to this case, the Trustee fails to connect the $2 Million Goodwill Payment or the $12.4 Million Transfer to any larger "Ponzi-like" scheme.

The Trustee's threadbare constructive fraudulent transfer allegations are also insufficient. *See id.* at 29-31. The Trustee provides nothing more than conclusory assertions that Zetta Singapore "did not receive reasonably equivalent value" for obligations it incurred through the Plane 6 and 7 sale and leasing transaction. Compl. ¶ 186. Rather than provide any supporting *facts*, the Trustee merely speculates—"upon information and belief"—that "Plane 6, Plane 7, and other consideration received were worth less than the total amount of debt the Debtors incurred under such transactions." *Id.* The Trustee's failure to offer anything more is predictable given the arm's-length nature of the transactions.

### IV. THE TRUSTEE HAS FAILED TO ADEQUATELY PLEAD HIS PREFERENCE CLAIMS.

The Trustee seeks to recover, against Minsheng Business and a host of other entities, certain payments made to various law firms that allegedly were incurred "for the benefit of" the

---

[4] As detailed in the Yuntian Motion, there are simply no Ponzi-like facts of Cassidy funneling proceeds from new investors to repay existing investors under the guise of a legitimate business. Further, after two years of investigation, the Trustee neither makes nor could make any allegation that Minsheng or Yuntian Entities were in any way involved in or even aware of any misdeeds or any "Ponzi scheme."

1    Yuntian or Minsheng Entities. *See* Compl. ¶¶ 298, 303, 307. The Trustee again resorts to

2    guesswork, stating that "upon information and belief," the legal fees were incurred *by the Yuntian*

3    *or Minsheng Entities* in connection with the Planes 6, 7, and 12 sale and leasing transactions.

4    Compl. ¶¶ 298, 302. That speculation fails basic pleading standards. *See* Yuntian Motion at 31-

5    34. It is also directly inconsistent with the Trustee's allegations in other adversary proceedings,

6    where he has alleged that the law firms "entered into agreements *with the Debtors*." *See* Adv.

7    Proc. No. 2:19-ap-01339, Dkt. No. 1 ¶ 18; Adv. Proc. No. 2:19-ap-01358, Dkt. No. 1 ¶ 18.[5]

8    Further, the Trustee has admitted that certain of these legal fee payments were not made on behalf

9    of any Yuntian or Minsheng Entity or in connection with the sale and leasing transaction relating

10    to Planes 6, 7, 12 or the Undelivered Aircraft. *See* Adv. Proc. No. 2:19-ap-01382-SK, Lyons

11    Declaration, Dkt. No. 70.1, Schedule 3.

12    **V.    THE TRUSTEE HAS FAILED TO ADEQUATELY PLEAD HIS TURNOVER
        CLAIMS, WHICH IN ANY EVENT FAIL AS A MATTER OF LAW.**

13

14          The Trustee's turnover claims (Counts VII and XI)—alleging, "upon information and

15    belief," that a Yuntian or Minsheng entity may have "sold" up to four Challenger aircraft to a

16    third party for "profit"—are wholly speculative and devoid of factual support. *See* Yuntian

17    Motion at 34-35. *First*, the three Undelivered Aircraft were never acquired by any Yuntian or

18    Minsheng Entity (the orders for those planes were canceled by Zetta Singapore), and Plane 12

19    was leased to a third party. *See* BK Dkt. No. 908, at ¶ 15. The factual assumptions for the

20    Trustee's turnover claims are simply false.

21          *Second*, the Aircraft Lease Agreements for Planes 6, 7, and 12 do not provide the Debtors

22    with any rights to ownership until the lease term for each aircraft ended, all rental payments were

23    made, and all obligations were performed. *See* Torborg Decl., Exs. B, E, H § 22.1.[6] Such

---

24         [5] The Trustee even seeks to recover legal fee transfers that were made outside that 90-day
25    preference period, which is prohibited as a matter of law. Compl., Schedule F. The Trustee has also
   filed avoidance claims against two of the law firms, Mourant Ozannes and Milbank Tweed, who
26    received payments at issue. *See* Adv. Proc. No. 2:19-ap-01339 [Dkt. No. 1] and Adv. Proc. No. 2:19-
   ap-01358 [Dkt. No. 1].

27         [6] Principles of international comity, see *supra* at 3-4, apply to the Trustee's turnover claims to
28    the extent they require a determination of the nature of Zetta Singapore's interest in Plane 12. Such a

1  agreements further provided that the Yuntian Entities had the right to repossess and then dispose

2  of the aircraft in their sole authority as they saw fit in the event of any default. *See* Torborg Decl.,

3  Exs. B, E, H, §§ 23.1.1(a), 23.3, 23.5. As matter of law, Section 1110 of the Bankruptcy Code

4  provides that the parties' rights under aircraft leases govern upon repossession. Accordingly,

5  Counts VII and XI should be dismissed.

6  **VI.    THE TRUSTEE'S REQUEST FOR DISALLOWANCE UNDER SECTION 502**
   **FAILS UNDER RULE 12(B)(6).**

7

8      Section 502(d) is a remedial provision which provides for disallowance of a party's claim

9  to the extent a trustee is successful in establishing an avoidance or turnover action. Because none

10 of the underlying claims asserted against Minsheng Business pleads a plausible claim, Count XV

11 should be dismissed. *See* Yuntian Motion at 35.

12                                **CONCLUSION**

13     For the foregoing reasons, Counts II, VI, VII, XI, XII, and XV, to the extent that they

14 assert claims against Minsheng Business, should be dismissed.

15

16

17

18

19

20

21

22

23

24

25

26

27 _____

28 determination would require substantive application of English law pursuant to the choice of law and
   forum clauses in the underlying contracts. *See* Yuntian Motion at 21.

1   Dated: December 20, 2019                    JONES DAY

2

3                                               */s/ Daniel T. Moss*
                                                Daniel T. Moss (*pro hac vice*)
                                                dtmoss@jonesday.com
4                                               David S. Torborg (*pro hac vice*)
                                                dstorborg@jonesday.com
5                                               JONES DAY
                                                51 Louisiana Avenue, N.W.
6                                               Washington, D.C. 20001-2113
                                                Telephone: (202) 879-3939
7                                               Facsimile: (202) 626-1700

8                                               Joshua M. Mester (SBN 194783)
                                                jmester@jonesday.com
9                                               JONES DAY
                                                555 South Flower Street
10                                              Fiftieth Floor
                                                Los Angeles, CA 90071.2452
11                                              Telephone: (213) 489-3939
                                                Facsimile: (213) 243-2539
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28