1

ARNOLD & PORTER KAYE SCHOLER LLP
Brian K. Condon (Bar No. 138776)
brian.condon@arnoldporter.com
Oscar Ramallo (Bar No. 241487)
oscar.ramallo@arnoldporter.com
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
+1 213.243.4000
+1 213.243.4199

2

3

4

5

6

ARNOLD & PORTER KAYE SCHOLER LLP
Michael L. Bernstein (*Pro Hac Vice*)
michael.bernstein@arnoldporter.com
Gerardo Mijares-Shafai (*Pro Hac Vice*)
gerardo.mijares-shafai@arnoldporter.com
601 Massachusetts Avenue, NW
Washington DC 20001-3743
+1 202.942.5000
+1 202.942.5999

7

8

9

10

11

*Attorneys for Defendants*
Universal Leader Investment Limited,
Glove Assets Investment Limited, and
Truly Great Global Limited

12

13

14

**IN THE UNITED STATES BANKRUPTCY COURT**

15

**CENTRAL DISTRICT OF CALIFORNIA**

16

**LOS ANGELES DIVISION**

17

In re:

18

ZETTA JET USA, LTD., a California corporation,

19

Debtor.

20

21

22

23

24

25

In re:

26

ZETTA JET PTE, LTD., a Singaporean corporation,

27

Debtor.

28

Lead Case No.: 2:17-bk-21386-SK
Chapter 7
Jointly Administered With:
Case No.: 2:17-bk-21386-SK

Adv. Proc. No. 2:19-AP-01383-SK

**DEFENDANTS UNIVERSAL LEADER INVESTMENT LIMITED, GLOVE ASSETS INVESTMENT LIMITED, AND TRULY GREAT GLOBAL LIMITED MOTION TO DISMISS COUNTS I, II, IV, V, VIII, XIII, XIV, & XV OF ADVERSARY COMPLAINT**

Hearing:  TBD

Date:     TBD
Time:     TBD

| | |
|---|---|
| JONATHAN D. KING, solely in his capacity as Chapter 7 Trustee of Zetta Jet USA, Inc. and Zetta Jet PTE, Ltd. | Place:   Courtroom 1575<br>255 East Temple Street<br>Los Angeles, CA 90012 |
| Plaintiff, | |
| v. | |
| YUNTIAN 3 LEASING CO. DESIGNATED ACTIVITY CO. F/K/A YUNTIAN 3 LEASING CO. LTD., ET AL. | |
| Defendants | |

**TO THE HONORABLE SANDRA R. KLEIN, UNITED STATES BANKRUPTCY JUDGE, AND TO PLAINTIFF'S COUNSEL:**

　　**PLEASE TAKE NOTICE** that this Motion (as defined below) is brought under Federal Rules of Civil Procedure 12(b)(6), 8(a), and 9(b), as made applicable by Federal Rules of Bankruptcy Procedure 7012, 7008, and 7009, and is based on the accompanying Memorandum of Points and Authorities, the Declaration of Brian K. Condon and Exhibits, the docket in this adversary proceeding and in the above-captioned Chapter 7 cases (the "Chapter 7 Cases"), and such other evidence and argument as may properly come before the Court at any hearing.

　　**PLEASE TAKE FURTHER NOTICE** that Defendants Universal Leader Investment Limited ("UL"), Glove Assets Investment Limited ("Glove"), and Truly Great Global Limited ("TGG," and together with UL and Gove, the "UL Defendants") hereby move (by this "Motion") to dismiss, without leave to amend, Counts I, II, IV, V, VIII, XIII, XIV, and XV in the adversary complaint [Adv. P. Docket No. 1] (the "Complaint")[1] filed by the Trustee on behalf of debtors Zetta Jet PTE Ltd. ("Zetta PTE"), and Zetta Jet USA Inc. ("Zetta USA" and together with Zetta PTE, the "Debtors") in the above-captioned Chapter 7 Cases, for failure to state a claim upon which relief can be granted, because the Trustee cannot seek to avoid or recharacterize extraterritorial transfers, the Complaint insufficiently pleads the facts necessary to plausibly state claims for relief, fails to plead fraud with particularity, and, on its face, discloses dispositive affirmative defenses.

---

[1] Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the Complaint.

1    **PLEASE TAKE FURTHER NOTICE** that pursuant to the Court's order dated

2    December 2, 2019 [Docket No. 21] (the "Scheduling Order") in the above captioned adversary

3    proceeding (the "Adversary Proceeding"), Plaintiff's written response to the Motion shall be filed

4    and served on or before January 31, 2020, and the UL Defendants' reply shall be filed and served on

5    or before February 21, 2020.

6    **WHEREFORE**, UL Defendants respectfully request that the Court enter an order

7    (i) granting the Motion, (ii) dismissing, without leave to amend, each claim for relief against the UL

8    Defendants for failure to state a claim, and (iii) granting any and all other relief the Court deems just

9    and necessary.

10    Dated:  December 20, 2019                    ARNOLD & PORTER KAYE SCHOLER LLP

11

12                                    By:    /s/ *Brian K. Condon*
                                        Brian K. Condon (Bar No. 138776)
13                                      Oscar Ramallo (Bar No. 241487)
                                        Attorneys for UL Defendants
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UL DEFENDANTS' MOTION TO DISMISS ADVERSARY COMPLAINT

# **TABLE OF CONTENTS**

**Page**

I.    The Trustee May Not Avoid Extraterritorial Transfers. .................................................... 5

    A.    11 U.S.C. §§ 547, 548, 550, 502, and 105(A) Do Not Apply Extraterritorially.......... 5

    B.    Each of the UL and Glove Transactions Was Extraterritorial. ..................................... 7

        1.    Initial Acquisition of Plane 6 and Plane 7. ........................................... 8

        2.    Minsheng Transaction. ................................................................... 11

        3.    The Third Loan. ............................................................................ 13

    C.    International Comity Requires Dismissal of the Trustee's Claims........................... 13

II.    The Complaint Fails to State Fraudulent Transfer or Preference Claims....................... 13

    A.    Counts I and II Fail to State Fraudulent Transfer Claims......................................... 14

        1.    Intentional Fraudulent Transfer. ....................................................... 14

        2.    Constructive Fraudulent Transfer. ..................................................... 19

            a.    Property Interest Transferred or Obligation Incurred. ................ 20

            b.    Reasonably Equivalent Value. ...................................................... 21

            c.    Transferor's Financial Condition. ................................................. 23

                (i)    Insolvency. ............................................................. 23

                (ii)    Unreasonably Small Capital. ........................................... 24

                (iii)    Cash Flow Test (Equitable Insolvency). .......................... 26

    B.    The Trustee's Deficient Pleading of a "Ponzi-Like" Scheme Does Not Support a Fraudulent Transfer Claim. ....................................................................... 26

    C.    The Complaint Fails to State Preference Claims Under Counts IV, V, and VIII. ..... 29

        1.    The Elements of a Preference Claim. ................................................. 29

            a.    Count IV Fails to State a Preference Claim. ............................... 30

                (i)    Failure to Adequately Allege Insolvency. ...................... 30

                (ii)    Failure to Adequately Allege a Greater Recovery Than Under Chapter 7 as a Result of Alleged Preferences. ...... 30

                        b.        The Complaint Fails to State a Preference Claim under Count V.
                        ........................................................................................................ 32

                        c.        Count VIII Fails to State a Preference Claim. ............................ 32

            2.        Affirmative Defense to Preference Claims - New Value..................................... 32

III.    The Complaint Fails to State a Claim for Recharacterization of the Third Loan. ........... 33

IV.    The Complaint Fails to State a Claim for Violation of the Automatic Stay. ................... 34

V.     Count XV for Disallowance of the UL Defendants' Claims Must Be Dismissed........... 35

UL DEFENDANTS' MOTION TO DISMISS ADVERSARY COMPLAINT

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Akers v. Koubourlis (In re Koubourlis)*,
  869 F.2d 1319 (9th Cir. 1989) .......................................................................... 17, 23

*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
  842 F. Supp. 2d 1216 (C.D. Cal. 2012) ................................................................ 21, 23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 14, 20

*Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortg. Inv. Corp.)*,
  256 B.R. 664 (Bankr. S.D.N.Y. 2000), *aff'd*, 264 B.R. 303 (S.D.N.Y. 2001) .......................... 28

*Begier v. IRS*,
  496 U.S. 53 (1990) ................................................................................................ 20

*Bell Atl. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................ 14

*Bly–Magee v. California*,
  236 F.3d 1014 (9th Cir. 2001) .......................................................................... 16

*Butner v. U.S.*,
  440 U.S. 48 (1979) ................................................................................................ 33

*Chuidian v. Philippine Nat'l Bank*,
  976 F.2d 561 (9th Cir.1992) .......................................................................... 34

*Credit Managers Ass'n of S. Cal. v. Fed. Co.*,
  629 F. Supp. 175 (C.D. Cal. 1985) .......................................................................... 25

*Crystallex Int'l Corp. v. Petróleos de Venez., S.A.*,
  879 F.3d 79 (3d Cir. 2018) .......................................................................... 20, 21

*Dawe v. Corr. USA*,
  No. CIV S-07-1790 LKK/EF, 2009 WL 1420969 (E.D. Cal. May 20, 2009) .......................... 32

*DeGiacomo v. Draper Knitting Co., Inc. (In re Jannel Indus., Inc.)*,
  245 B.R. 757 (Bankr. D. Mass. 2000) .......................................................................... 33

*Destfino v. Reiswig*,
  630 F.3d 952 (9th Cir. 2011) .......................................................................... 15

*Diaz-Barba v. Kismet Acquisition, LLC*,
  No. 08CV1446 BTM (BLM), 2010 WL 2079738 (S.D. Cal. May 20, 2010) .......................... 11

*Donell v. Kowell*,
     533 F.3d 762 (9th Cir. 2008) ...................................................................... 27, 28, 29

*Ebeid ex rel. United States v. Lungwitz*,
     616 F.3d 993 (9th Cir. 2010) ............................................................................. 15

*EEOC v. Arabian American Oil Co.*,
     499 U.S. 244, 111 S. Ct. 1227 (2010) .................................................................. 6

*Grede v. UBS Sec., LLC*,
     303 F. Supp. 3d 638 (N.D. Ill. 2018) ................................................................. 16

*Guam Inv. Co. v. Cent. Bldg., Inc.*,
     288 F.2d 19 (9th Cir.1961) ................................................................................. 32

*Hwa Yon Cho v. HSBC Bank USA*,
     No. SACV 10-0142 DOC(RNBX), 2010 WL 11465293
     (C.D. Cal. Apr. 26, 2010)...................................................................................... 17

*In re Acequia, Inc.*,
     34 F.3d 800 (9th Cir. 1994) ....................................................................... 14, 15, 17

*In re Ampal-Am. Israel Corp.*,
     562 B.R. 601 (Bankr. S.D.N.Y. 2017) .......................................................... 6, 8, 10, 11

*In re Automated Fin. Corp.*,
     No. 1:08-BK-14339-MT, 2011 WL 10502417 (Bankr. C.D. Cal. Jan. 25, 2011)............... 15, 27

*In re AWTR Liquidation Inc.*,
     548 B.R. 300 (Bankr. C.D. Cal. 2016)................................................................. 30

*In re Bankr. Estate of Midland Euro Exch. Inc.*,
     347 B.R. 708 (Bankr. C.D. Cal. 2006)............................................................. 6, 7, 9

*In re Blue Earth, Inc.*,
     No. 3:16-BK-30296-DM, 2019 WL 4929933 (B.A.P. 9th Cir. Oct. 2, 2019)....................*passim*

*In re Caremerica, Inc.*,
     409 B.R. 346 (Bankr. E.D.N.C. 2009) ................................................................. 32

*In re CBI Holding Co., Inc.*,
     529 F.3d 432 (2d Cir. 2008)................................................................................ 16

*In re CIL Ltd.*,
     582 B.R. 46 (Bankr. S.D.N.Y. 2018) ........................................................... 6, 8, 10, 11

*In re Consol. Meridian Funds*,
     487 B.R. 263 (Bankr. W.D. Wash. 2013) ............................................................. 29

*In re Empire Land, LLC*,
     No. 6:08-BK-14592-MH, 2016 WL 1371278 (Bankr. C.D. Cal. Apr. 4, 2016)....................... 15

UL DEFENDANTS' MOTION TO DISMISS ADVERSARY COMPLAINT

*In re FAH Liquidating Corp.*,
   572 B.R. 117 (Bankr. D. Del. 2017) ................................................................. 6, 7

*In re Fedders N. Am., Inc.*,
   405 B.R. 527 (Bankr. D. Del. 2009) .................................................................. 15

*In re Fehrs*,
   391 B.R. 53 (Bankr. D. Idaho 2008) .................................................................. 7

*In re Fitness Holdings Int'l, Inc.*,
   714 F.3d 1141 (9th Cir. 2013) ................................................................. 2, 8, 34

*In re GGW Brands, LLC*,
   504 B.R. 577 (Bankr. C.D. Cal. 2013) ............................................................. 15

*In re Gluth Bros. Constr., Inc.*,
   424 B.R. 368 (Bankr. N.D. Ill. 2009) ............................................................... 15

*In re Groff*,
   No. 11-00329-8-RDD, 2011 WL 6140744 (Bankr. E.D.N.C. Dec. 9, 2011) ..................... 30, 32

*In re Huber*,
   No. 11-41013, 2013 WL 6184986 (Bankr. W.D. Wash. Nov. 25, 2013) ........................ 6

*In re ICPW Liquidation Corp.*,
   600 B.R. 640 (Bankr. C.D. Cal. 2019) .............................................................. 18

*In re IRFM*,
   52 F.3d 228 (9th Cir. 1995) ............................................................................. 33

*In re LLS Am., LLC*,
   No. 09-06194-PCW, 2013 WL 3305393 (Bankr. E.D. Wash. July 1, 2013) ................... 27

*In re Lothian Oil Inc.*,
   650 F.3d 539 (5th Cir. 2011) ........................................................................... 34

*In re Lyondell Chem. Co.*,
   543 B.R. 127 (Bankr. S.D.N.Y. 2016) ............................................................. 7, 10

*In re Maxwell Commc'n Corp.*,
   186 B.R. 807 (S.D.N.Y. 1995) ..................................................................... 6, 9, 10

*In re Nirvana Rest. Inc.*,
   337 B.R. 495 (Bankr. S.D.N.Y. 2006) ........................................................... 19, 24

*In re Picard, ex rel. Bernard L. Madoff Inv. Sec. LLC*,
   917 F.3d 85 (2d Cir. 2019), *petition for cert. filed* (U.S. Aug. 30, 2019)
   (No. 19-277) ................................................................................................... 8

*In re Operations NY LLC*,
   490 B.R. 84 (Bankr. S.D.N.Y. 2013) ........................................................... 25, 30

*In re SCI Real Estate Invs., LLC*,
    No. 2:11-BK-15975-PC, 2013 WL 1829648 (Bankr. C.D. Cal. May 1, 2013) ........ 20, 21, 22, 23

*In re Sherwood Invs. Overseas Ltd., Inc.*,
    No. 6:15-cv-1469-Orl-40-TBS, 2016 WL 5719450 (M.D. Fla. Sept. 30, 2016) ....................... 10

*In re Simon*,
    153 F.3d 991 (9th Cir. 1998) ................................................................................................ 11

*In re Singh*,
    434 B.R. 298 (Bankr. E.D.N.Y. 2010) .................................................................................. 15

*In re Taubman*,
    160 B.R. 964 (Bankr. S.D. Ohio 1993) ................................................................................ 27

*In re Tribune Co. Fraudulent Conveyance Litig.*,
    No. 11MD2296 (DLC), 2019 WL 294807 (S.D.N.Y. Jan. 23, 2019) ...................................... 16

*In re United Energy Corp.*,
    944 F.2d 589 (9th Cir.1991) ................................................................................................ 28

*In re Vortex Fishing Sys., Inc.*,
    277 F.3d 1057 (9th Cir. 2001) ............................................................................................. 34

*In re Zetta Jet USA, Inc./King v. Jetcraft Corporation*,
    No. 2:19-ap-01382-SK (Bankr. C.D. Cal. Dec. 6, 2019), ECF No. 69 ...................................... 3

*Kalisch v. Maple Trade Fin. Corp. (In re Kalisch)*,
    413 B.R. 115 (Bankr. S.D.N.Y. 2008) ................................................................................. 16

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ................................................................................................. 9

*Kupetz v. Wolf*,
    845 F.2d 842 (9th Cir.1988) ................................................................................................ 15

*Miller v. City of Los Angeles*,
    No. CV 13-5148-GW(CWX), 2014 WL 12610195 (C.D. Cal. Aug. 7, 2014) .......................... 22

*Moody v. Sec. Pac. Bus. Credit, Inc.*,
    971 F.2d 1056 (3d Cir. 1992) ............................................................................................. 25

*Morrison v. Nat'l Australia Bank Ltd.*,
    561 U.S. 247 (2010) ......................................................................................... 5, 7, 8, 9, 11

*Quelimane Co. v. Stewart Title Guar. Co.*,
    19 Cal. 4th 26, 77 Cal. Rptr. 2d 709, 960 P.2d 513 (1998) ...................................................... 18

*Scholes v. Lehmann*,
    56 F.3d 750 (7th Cir. 1995) ................................................................................................ 27

UL DEFENDANTS' MOTION TO DISMISS ADVERSARY COMPLAINT

*Steinle v. City & Cty. of San Francisco*,
    919 F.3d 1154 (9th Cir. 2019) .......................................................................... 9

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ........................................................................... 15

*United States ex rel. Chunie v. Ringrose*,
    788 F.2d 638 (9th Cir. 1986) ........................................................................... 14

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ............................................................................. 9

*United States v. United Healthcare Ins. Co.*,
    848 F.3d 1161 (9th Cir. 2016) ......................................................................... 15

## **Statutes**

11 U.S.C. § 101(32)(A) .......................................................................................... 17

11 U.S.C. § 105 ................................................................................................. 2, 34

11 U.S.C. § 105(a) ...................................................................................... 5, 7, 13, 33

11 U.S.C. § 362 ...................................................................................................... 34

11 U.S.C. § 362(a) ............................................................................................ 34, 35

11 U.S.C. § 362(a)(1) ............................................................................................. 34

11 U.S.C. § 362(a)(2-8) ......................................................................................... 35

11 U.S.C. § 502 ................................................................................... 5, 6, 7, 8, 13

11 U.S.C. § 502(d) ...................................................................................... 5, 6, 35

11 U.S.C. § 524 ...................................................................................................... 11

11 U.S.C. § 541 ........................................................................................... 6, 7, 11

11 U.S.C. § 541(a) .................................................................................................... 5

11 U.S.C. § 541(a)(1) ............................................................................................... 6

11 U.S.C. § 541(a)(2) ............................................................................................. 11

11 U.S.C. § 541(a)(3) ............................................................................................... 6

11 U.S.C. § 547 ............................................................................................. *passim*

11 U.S.C. § 547(a)(2) ............................................................................................. 33

11 U.S.C. § 547(b) .......................................................................................... 30, 32

UL DEFENDANTS' MOTION TO DISMISS ADVERSARY COMPLAINT

11 U.S.C. § 547(b)(5) ............................................................................ 30, 31

11 U.S.C. § 547(c) .................................................................................... 29

11 U.S.C. § 547(c)(4) ............................................................................ 32, 33

11 U.S.C. § 547(f) .................................................................................... 29

11 U.S.C. § 548.................................................................................. *passim*

11 U.S.C. § 548(a)(1)(A) ................................................................. 14, 15, 16

11 U.S.C. § 548(a)(1)(B) ......................................................................... 20

11 U.S.C. § 548(a)(1)(B)(ii) ............................................................... 23, 26

11 U.S.C. § 550 ........................................................... 5, 6, 7, 8, 11, 13

28 U.S.C. § 1334(e) .................................................................................. 6

Securities and Exchange Act of 1934 § 10(b) ......................................... 5

Securities and Exchange Act of 1934 § 30b ............................................ 5

**<u>Other Authorities</u>**

5 COLLIER ON BANKRUPTCY ¶ 548.05[3][b]
   (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2012) ..................... 25

Bruce A. Markell, *Toward True and Plain Dealing: A Theory of Fraudulent*
   *Transfers Involving Unreasonably Small Capital*, 21 Ind. L. Rev. 469 (1988) ......... 25

Federal Rules of Civil Procedure 8(a) ...................................................... 20

Federal Rules of Civil Procedure 9(b) ........................................... 15, 16, 19

Federal Rules of Civil Procedure 12(b)(6)....................................... 13, 33

Restatement (Second) of Conflict of Laws § 187 (1989) ............................ 34

UL DEFENDANTS' MOTION TO DISMISS ADVERSARY COMPLAINT

## **MEMORANDUM OF POINTS AND AUTHORITIES**

This adversary proceeding is a misguided attempt by the Trustee to make up for Geoffrey Cassidy's alleged embezzlement, and/or the failure of management (and later the Chapter 11 Trustee) to operate the business successfully, by extracting additional funds from the foreign entities that provided Zetta PTE with investments, loans, and revenue-generating aircraft required to operate its business. The Trustee seeks to recover funds from Zetta PTE's largest and only outside investors—the UL Defendants—by fabricating losses out of whole cloth from foreign transactions that actually resulted in a substantial net infusion of funds and assets *into* Zetta PTE. The Trustee also seeks to recover funds that did not come from, and were *never* the property of, either of the Debtors. The facts pleaded on the face of the Complaint and admissions by the Trustee confirm these facts, and are directly at odds with the Trustee's claims. The Complaint should be dismissed on multiple grounds.

**First**, the Bankruptcy Code provisions on which the Trustee relies do not apply extraterritorially to the foreign transactions at issue in this Complaint—the financing of a Singapore company, Zetta PTE, by foreign parties resident in China and the British Virgin Islands, utilizing funds from an account in Singapore deposited to an account in Hong Kong, and conducted under contracts governed by the laws of Singapore, the United Kingdom, and Hong Kong.[1]

**Second**, Count I alleges actual fraudulent transfers, but the Trustee relies only on alleged theft and other misappropriation by Cassidy and fails to allege the requisite badges of fraud, or any other facts showing actual intent *on the part of Zetta PTE* to hinder, delay, or defraud its creditors in the Original Plane Agreements or the Minsheng Transaction. The Trustee tries to circumvent the absence of actual fraud by alleging, in conclusory fashion, the existence of a "Ponzi-like" scheme. But the Complaint is wholly inadequate to invoke case law regarding Ponzi schemes—and, even if there were sufficient facts alleged to support the existence of a Ponzi scheme, the Trustee's claims against the UL Defendants would fail as a matter of law because the Complaint acknowledges that the UL Defendants were the *victims* of the alleged scheme. Count II for constructive fraudulent transfer is equally deficient. The Trustee fails to plead facts plausibly showing a lack of reasonably equivalent value. Indeed, he does not allege any facts showing the value of the consideration received by either

---

[1] The UL Defendants also move to dismiss the Complaint under the doctrine of international comity, and the UL Defendants join in and adopt the arguments and evidence put forth by defendants Yuntian 3 Leasing Company, et al. in their Motion to Dismiss filed on December 9, 2019 [Docket No. 32] (the "Yuntian MTD") at p. 12-22. *See infra* Section I.C.

of the Debtors in the challenged transactions.  He also fails adequately to plead facts showing that the relevant Debtor was insolvent at the time of each challenged transaction, instead alleging in conclusory fashion that "the Debtors" were insolvent—without distinguishing between the two separate Debtors, Zetta PTE and Zetta USA (a defect that runs throughout the Complaint).  Finally, the Trustee seeks to avoid a transfer to the UL Defendants of funds that were never the property of either Debtor, but rather funds from a third-party (Minsheng) which acquired the planes.

**Third**, the Trustee fails to plead facts supporting the essential elements of a preference claim (Counts IV, V and VII).  For example, the Trustee fails to plead facts showing that the allegedly transferred funds in Count V were property of either Debtor—because he cannot do so; they were not.  He also fails to plead facts showing insolvency, the same defect that plagues the fraudulent transfer claims.  And he fails to state facts showing that the UL Defendants would have received less in a Chapter 7 liquidation.  The Trustee's effort to state a claim by simply parroting the elements of the statute must fail.  The Trustee also disregards a dispositive defense that appears on the face of the Complaint—subsequent new value—as to a substantial majority of the alleged preferential transfers.

**Fourth**, the Trustee's claim in Count XIII that a $15 million bridge loan extended by UL to Zetta PTE in June 2017 should be recharacterized as equity fails to allege facts supporting recharacterization.  He seeks recharacterization under Bankruptcy Code § 105, inexplicably ignoring controlling Ninth Circuit law holding that recharacterization is available only to the extent permitted by applicable non-bankruptcy law, which in this case is Hong Kong law.  *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1149 (9th Cir. 2013).  Even if that were not the case, the Trustee fails to plead facts showing satisfaction of the § 105 recharacterization factors.

**Fifth and finally**, the Trustee's claim in Count XIV against TGG (the only claim against TGG) fails to state a claim that TGG violated the automatic stay by seeking an injunction from a Singapore court regarding the insolvency of a Singapore chartered company.

## SUMMARY OF RELEVANT FACTS

The Complaint seeks to recover from the UL Defendants funds from several aircraft transactions that resulted in a substantial net investment *into* Zetta PTE.  The Complaint rests almost entirely on alleged wrongdoing by Cassidy; it does not allege any facts suggesting that the UL

Defendants knew of or abetted Cassidy's alleged misconduct.  Rather, the Complaint makes clear that the UL Defendants were the primary victims of Cassidy's alleged scheme.  Compl. ¶¶ 2, 5, 65, 79, 90, 91, 118, 131.  As the Trustee has admitted, "Li Qi [Director of the UL Defendants][was] essentially the sole investor in the Debtors."  Trustee's Opposition to Jetcraft Defendants' Motion to Dismiss at 24, *In re Zetta Jet USA, Inc./King v. Jetcraft Corporation,* No. 2:19-ap-01382-SK (Bankr. C.D. Cal. Dec. 6, 2019), ECF No. 69 ("Trustee's Jetcraft Opp.").  "[T]he only reason why Cassidy's scheme does not fit squarely within the Ponzi-scheme framework … is because he was only able to secure one significant investor, Li Qi, before his scheme came crashing down."  *Id.* at 9.  As a result, Cassidy's schemes were "detrimental to the Debtor's investor, Li Qi."  *Id.* at 17 n.6.  Ironically, the Trustee now seeks nearly $80 million dollars from the UL Defendants, the biggest victims.

The Complaint alleges that the transactions at issue began in early December 2015 when, utilizing $48 million of funds advanced by UL, "Glove Assets entered into an aircraft purchase agreement with Bombardier" pursuant to which Glove acquired Plane 6.  Compl. ¶¶ 84-85.  To enable Zetta PTE to use Plane 6, on December 29, 2015, Zetta PTE and Glove entered into a Master Aircraft Finance Lease ("Plane 6 MAFL").  *Id.* ¶ 86.  Zetta PTE also entered into a similar Master Aircraft Finance Lease for Plane 7—a plane already owned by UL ("Plane 7 MAFL").  *Id.* ¶ 86.  The Trustee later mischaracterizes these leases as secured financings—without articulating any basis for doing so, and without seeking any such determination from the Court—and then pleads causes of action with vague allegations about non-existent "purchase prices," "interest rates," "purchase terms," etc. *See*, *e.g.*, *Id.* ¶¶ 170-174.  Between January and July 2016, the Trustee alleges Zetta PTE made six contractually-required lease payments, totaling under $12 million.  *Id.* ¶ 88.

In February 2016, TGG invested $19 million in Zetta PTE.  *Id.* ¶ 89.  In return, TGG received 10% of Zetta PTE's shares, and Li Qi became a director (but not an officer) of Zetta PTE.  *Id.* ¶¶ 89-90.  Also, in February 2016, UL made a $10 million loan to Zetta PTE (the "First Loan").  *Id.* ¶ 92. In July 2016, UL made a second $10 million loan to Zetta PTE (the "Second Loan").  *Id.* ¶ 118.  Over the next year, Zetta PTE paid approximately $2.3 million in interest on the First Loan and Second Loan in accordance with the governing loan documents.  *Id.* ¶ 143.

In September 2016, Zetta PTE and the UL Defendants entered into a sale transaction with

Minsheng (the "Minsheng Transaction") for the two planes. *Id.* ¶ 96. Minsheng purchased Planes 6 and 7 from UL and Glove, respectively, pursuant to the "Third Plane 6 Purchase Agreement" and "Third Plane 7 Purchase Agreement." *Id.* ¶¶ 106, 108. Both agreements are governed by English law. Condon Dec., Exs. E at § 11.3(a), F at § 11.3(a). The UL Defendants received two payments of $27.5 million from Minsheng for title to the two planes. Condon Dec., Exs. E at Schedule 2, F at Schedule 2. This was well below the original purchase prices paid by UL (for example, UL paid $48 million for Plane 6 alone). *See* Compl. ¶¶ 84-85. The Trustee makes the conclusory allegation—without any factual support—that Minsheng's money was actually Zetta PTE's property. *Id.* ¶ 227.

Glove received nothing from the closing of the Minsheng Transaction. *Id.* ¶ 149. (The $55 million paid by Minsheng was used to pay amounts owed with respect to Plane 7, owned by UL. *Id.* ¶ 106). Thus, in September 2016, UL, Glove and Zetta PTE entered into the "Clarification," under which the remaining amounts Zetta PTE owed to Glove for Plane 6 became an unsecured obligation. *Id.* ¶ 110. This is the basis of Glove's $43 million claim in these Chapter 7 cases. *See* Proof of Claim No. 95. Over the next year, Zetta PTE paid approximately $10 million (the "Plane 6 Transfers") under the Clarification. *Id.* ¶ 150.

In June 2017, UL made a $15 million loan (referred to in the Complaint as the "Third Investment") to Zetta PTE (the "Third Loan"). *Id.* ¶ 126. In connection with the Third Loan, Truly Great received 20% of Zetta PTE's stock from other Zetta PTE shareholders. *Id.* ¶ 129. The Trustee alleges, without facts, that this loan was "an equity investment, not a true loan." *Id.* ¶ 130.

According to the Trustee's allegations, in their dealings with Zetta PTE since 2015, the UL Defendants leased two Global 6000 airplanes for Zetta PTE's charter business, loaned Zetta PTE $35 million, and invested $19 million in equity. In return, the Trustee alleges the UL Defendants received approximately $24.3 million in contractually-required lease and loan payments from Zetta PTE, a net gain to Zetta PTE and a net loss to the UL Defendants of more than $78 million, including the unpaid obligation on Plane 6 that remains an unsecured claim. By its Complaint, the Trustee seeks to continue the victimization of the UL Defendants by asking this Court to order one of Zetta PTE's largest creditors and "only[] outside investor[s]" (Compl. ¶ 79) to pay another $80 million to Zetta PTE's estate (including $55 million that came *from Minsheng*, not Zetta PTE), and to recharacterize a

1    $15 million loan as likely worthless equity.

2    **ARGUMENT**

3    **I.    The Trustee May Not Avoid Extraterritorial Transfers.**

4    The Trustee challenges transfers between Zetta PTE and the UL Defendants—transactions

5    between Singapore and BVI companies, with funds transferred by a Singapore entity from a bank in

6    Singapore to a BVI entity for deposit into a bank account in Hong Kong.  These extraterritorial

7    transfers are not subject to U.S. Bankruptcy Code avoidance and recharacterization provisions under

8    well-established authority.

9    **A.    11 U.S.C. §§ 547, 548, 550, 502, and 105(a) Do Not Apply Extraterritorially.**

10    The Supreme Court has instructed that "[w]hen a statute gives no clear indication of an

11    extraterritorial application, it has none." *Morrison v. Nat'l Australia Bank Ltd*., 561 U.S. 247, 255

12    (2010).  Courts should not attempt to "divin[e] what Congress would have wanted if it had thought of

13    the situation before the court." *Id.* at 261.  Rather, a statute applies extraterritorially only if Congress

14    has given "clear" and "affirmative" indications it should govern foreign transactions.  *Id.* at 265.

15    "[U]ncertain indications do not suffice." *Id.*  Where one part of a statute expressly applies

16    extraterritorially and another part of the statute is silent as to extraterritoriality, a Court should

17    presume silence means Congress did not intend the latter part of the statute to apply extraterritorially.

18    *Id.* at 263 (contrasting Exchange Act § 10(b) with § 30b "which *does* mention the Act's

19    extraterritorial application" and concluding § 10(b) applied only domestically).

20    Here, the Trustee seeks to avoid and recharacterize foreign transactions under sections 547,

21    548, 550, 502, and 105(a) of the Bankruptcy Code.  Sections 547 and 548 both allow a trustee to

22    avoid a transfer of "an interest of the debtor in property," and section 550 authorizes a trustee to

23    recover property avoided under sections 547 and 548, among others.  None of these sections

24    reference extraterritorial application.  Likewise, section 502(d) permits a court to disallow a claim

25    that is avoidable under sections 547 and 548, but does not indicate that it applies extraterritorially.

26    By contrast, where Congress intended the Bankruptcy Code to have extraterritorial effect, that

27    intent is explicit.  For example, Section 541(a) expressly references extraterritorial application, stating

28    that the commencement of a case creates an estate "comprised of all the following property, *wherever*

*located* and by whomever held." 11 U.S.C. § 541 (emphasis added). Similarly, 28 U.S.C. § 1334(e)

grants district courts exclusive jurisdiction over property "wherever located."

Courts have thus repeatedly concluded that Congress' silence on extraterritoriality in Sections

547, 548, 550, and 502 means that Congress did not intend those sections to apply extraterritorially.

*In re CIL Ltd.*, 582 B.R. 46, 92 (Bankr. S.D.N.Y. 2018) ("Congress's failure to [reference

extraterritoriality], particularly in light of the fact that sections 541(a)(1) and 1334(e) expressly apply

extraterritorially, operates to limit sections 548 and 550 to their terms."); *In re Ampal-Am. Israel

Corp.*, 562 B.R. 601, 612 (Bankr. S.D.N.Y. 2017) ("Bankruptcy Code § 547 does not contain a clear

indication that it applies extraterritorially, or allows the trustee to avoid transfers 'wherever located,'

or wherever they occurred."); *id.* at 614 ("The Transfer was not domestic, and hence, cannot be

avoided" nor disallowed under section 502(d).); *In re Bankr. Estate of Midland Euro Exch. Inc.*, 347

B.R. 708, 718 (Bankr. C.D. Cal. 2006) ("neither the plain language of the statute nor its reading in

conjunction with other parts of the Code establish congressional intent to apply § 548

extraterritorially"); *In re Maxwell Commc'n Corp. plc*, 186 B.R. 807, 820–21 (S.D.N.Y. 1995)

("Because Congress has not 'clearly expressed' its desire that § 547 govern extraterritorial

conduct, *see* [*EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248, 111 S. Ct. 1227, 1230–31

(2010)], that section cannot apply to the foreign transfers at issue in this case.").

A minority of courts—none of them in the Ninth Circuit—have taken the position that

property subject to avoidance under Sections 547 and 548 is included in the estate of property

"wherever located" created by Section 541. *See, e.g., In re FAH Liquidating Corp.*, 572 B.R. 117,

125–26 (Bankr. D. Del. 2017). The Central District of California has rejected this position because

> [i]t ignores the language in § 541(a)(1) and (a)(3) that the debtor must have an interest
> in the property "as of the commencement of the case" and that property of the estate
> includes "any interest in property that the trustee *recovers* under section... 550 ... of this
> title." (emphasis added). When the plain meaning of the language of the statute is clear,
> the courts need only enforce it. This statute seems very clear to any ordinary reader:
> property that has been fraudulently transferred only becomes property of the estate
> when the transfer has been set aside.

*Midland.*, 347 B.R. at 719. Consistent with *Midland*, courts in the Ninth Circuit have repeatedly held

that property subject to avoidance is not property of the estate at the commencement of the case. *In

re Huber*, No. 11-41013, 2013 WL 6184986, at *3 (Bankr. W.D. Wash. Nov. 25, 2013) (holding

assets do not become property of the estate under section 541 until the order avoiding the transfers is entered); *In re Fehrs*, 391 B.R. 53, 72 (Bankr. D. Idaho 2008) (same).

Courts following the minority view have bypassed the plain language of the statute, citing their own policy concerns.  *See, e.g., FAH Liquidating Corp.*, 572 B.R. at 125–26 ("It would be inconsistent (such that Congress could not have intended) that property located anywhere in the world could be property of the estate once recovered under section 550, but that a trustee could not avoid the fraudulent transfer and recover that property if the center of gravity of the fraudulent transfer were outside of the United States.") (quoting *In re Lyondell Chem. Co.*, 543 B.R. 127, 154 (Bankr. S.D.N.Y. 2016)).  But the Supreme Court has instructed that to "preserve[] a stable background against which Congress can legislate with predictable effects," courts must presume statutes do not apply extraterritorially, rather than constructing policy arguments to determine "what Congress would have wanted." *Morrison*, 561 U.S. at 257, 261.  Because "policy considerations … must be balanced against the presumption against extraterritoriality, which serves to protect against unintended clashes between our laws and those of other nations which could result in international discord," sections 547, 548, 550, and 502 of the Bankruptcy Code cannot be rewritten to overcome the presumption against extraterritoriality.  *Midland*, 341 B.R. at 718.

The Trustee also seeks in Count XIII to recharacterize the Third Loan from UL to Zetta PTE as equity, pursuant to Section 105(a).  Section 105(a) contains no reference to extraterritoriality. Because Congress has never clearly indicated that it intended to grant bankruptcy courts a free-floating ability to recharacterize loans made anywhere in the world, the Court must presume that Section 105(a) applies only domestically.[2]

Because Congress has not clearly expressed an intention for sections 547, 548, 550, 502 and 105(a) to apply outside the United States, the Trustee cannot state a claim under any of these sections to avoid or recharacterize extraterritorial transfers.

**B.    Each of the UL and Glove Transactions Was Extraterritorial.**

A trustee cannot establish that application of a statute is domestic merely by pointing to some

---

[2] In any event, in this Circuit recharacterization is authorized only to the extent permitted by applicable non-bankruptcy law—here, Hong Kong law—and the Trustee has not pleaded a claim for recharacterization under Hong Kong law.  *See* Section III, *supra*.

domestic contact related to the transaction.  "[I]t is a rare case of prohibited extraterritorial application that lacks *all* contact with the territory of the United States.  But the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case."  *Morrison*, 561 U.S. at 266.  Instead, the Court must base its analysis on the conduct that "the statute seeks to 'regulate.'"  *Id.* at 267.  Courts look to the "center of gravity" of the relevant conduct to determine whether claims that "touch and concern the territory of the United States ... do so with sufficient force to displace the presumption against extraterritorial application."  *CIL Ltd.*, 582 B.R. at 95 (internal quotation omitted).

Under Section 548, the focus is "a debtor's unlawful conduct—its fraudulent transfer of property," rather than conduct occurring before or after the transfer.  *In re Picard, ex rel. Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 99 (2d Cir. 2019), *petition for cert. filed* (U.S. Aug. 30, 2019) (No. 19-277).  Because a court's power to recharacterize debt flows from principles of avoidance, the focus in a recharacterization should also be on the debtor's transfer.  *See In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1147 (9th Cir. 2013).  Similarly, the focus of Section 547 "is the initial transfer that depletes the property that would have become property of the estate."  *Ampal*, 562 B.R. at 613.

The Complaint seeks relief on three transactions—(1) avoidance of transfers related to Zetta PTE's initial acquisition of Plane 6 and Plane 7 from UL and Glove in December 2015, (2) avoidance of transfers related to the "refinancing" (purchase) of Plane 6 and Plane 7 by the Minsheng Entities in September 2016, and (3) recharacterization of the "Third Loan" by UL to Zetta PTE in June 2017.  Each of these transactions is extraterritorial as a matter of law.

### 1.    Initial Acquisition of Plane 6 and Plane 7.

Zetta PTE leased Planes 6 and 7 from the UL Defendants in December 2015.  *See* Compl. ¶¶ 82, 86.  Regardless of the Trustee's characterization of the transfers as "a disguised financing structure" (*id.*), the Trustee fails to state a claim under Sections 547, 548, 550, and 502 because the transfers were not domestic.

The Complaint concedes that the parties to the transaction are foreign.  Zetta PTE is a Singapore corporation.  Compl. at 1.  UL and Glove are both British Virgin Islands ("BVI") companies.  *Id.* ¶¶ 24, 26.  Li Qi, the Director of UL and Glove, is a citizen of the People's Republic

of China and a "businessman and investor who resides in Hong Kong." *Id.* ¶ 22.[3]  Zetta PTE is

alleged to have a "Singapore Account" from which its funds were sent.  Compl. ¶ 85.  The Plane 6

and Plane 7 MAFLs provide that the "Payment Location," although initially routed through New

York, was for the benefit of the UL Defendants' account in Hong Kong.[4]  Condon Dec., Exs. B

§ 3.26, D § 3.26.  Given that the Court must focus *on the Debtor's transfers*—the Trustee cannot

allege that Zetta PTE transferred funds from a U.S. bank account.  *Morrison*, 561 U.S. at 266.  These

facts establish that the relevant conduct occurred outside of the U.S.  *Midland*, 347 B.R. at 715

(transfers extraterritorial where "[t]he transferor was a Barbados corporation, the transferee was an

English corporation, the funds originated from a bank account in London and, although transferred

through a bank account in New York, eventually ended up in another bank account in England");

*Maxwell*, 186 B.R. at 817 n.5 (transfers extraterritorial where "MCC's initial transfer to Barclays was

made from an MCC Natwest account in London to Barclays' branch in New York, through which all

payments made to Barclays in dollars are routed.  However, the funds were then immediately credited

to the outstanding balance on MCC's London overdraft account with Barclays").

The Complaint points to two transfers of funds from Zetta PTE to the U.S. account of

Bombardier to purchase Plane 6.  Compl. ¶ 85.  These allegations are irrelevant to determining

whether the transfer of funds to the UL Defendants were domestic because *they are not the transfers

that the Trustee is seeking to avoid.  See Morrison*, 561 U.S. at 266.  The Complaint does not allege

anything wrongful about the transfers to Bombardier, Bombardier is not a defendant, and the UL

Defendants are not alleged to have received any part of the funds transferred to Bombardier.  A prior

transfer of funds to an unrelated party, Bombardier, through a U.S. account, does not transform into a

---

[3] To date, service has not been effectuated on Li Qi.  Li Qi is not a movant herein, and any
reference to Li Qi is solely for the purpose of providing context for the UL Defendants' arguments.
[4] The Court may consider documents pleaded in the Complaint.  "Incorporation-by-reference is a
judicially created doctrine that treats certain documents as though they are part of the complaint
itself."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  "This doctrine
permits a court to consider a document 'if the plaintiff refers extensively to the document or the
document forms the basis of the plaintiff's claim.'"  *Steinle v. City & Cty. of San Francisco*, 919
F.3d 1154, 1162–63 (9th Cir. 2019) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.
2003)).  The Trustee specifically relies on the Plane 6 MAFL and Plane 7 MAFL as the basis for his
claims that the obligations incurred thereunder were unfair and subject to avoidance under a theory
of fraudulent transfer; accordingly, the provisions of such documents may be cited in response to
the allegations made in the Complaint.  *See id.*  Pursuant to the incorporation-by-reference doctrine,
all exhibits cited in this brief, if not made to items on the Court's docket, are to the attachments to
the Condon Declaration.

U.S. domestic transaction the foreign transfer of different funds from Zetta PTE's Singapore account to a Hong Kong bank account of the BVI-entity UL Defendants.

The Complaint also alleges that Wells Fargo, a Utah association, acted as a trustee in the transaction. Compl. ¶ 49. The Complaint explains that "it is commonplace for non-citizen U.S. corporate trusts to be formed as an option for registration of aircrafts in the United States." *Id.* ¶ 50. This nominal contact with the U.S. is insufficient to transform the fundamentally extraterritorial nature of the transfers. Courts have repeatedly held that use of U.S.-related professional services is insufficient to convert a foreign transaction into a domestic one. *CIL Ltd.*, 582 B.R. at 96 ("[E]ven assuming that the CEVA Equity Transfer was negotiated and documented at least in part by Turner and Beith and CIL's professionals in the United States, it is not enough to make the CEVA Equity Transfer a domestic transaction."); *Ampal*, 562 B.R. at 613 (provision of "legal work related to Ampal's SEC and NASDAQ filings" insufficient to make transaction domestic); *see also Lyondell*, 543 B.R. at 150 (fact that individual who devised allegedly fraudulent transfer "operated out of New York" was insufficient to overcome presumption of extraterritoriality); *In re Sherwood Invs. Overseas Ltd., Inc.*, No. 6:15-cv-1469-Orl-40-TBS, 2016 WL 5719450, at *11 (M.D. Fla. Sept. 30, 2016) (fact that debtor's principal directed the business from his home in Florida did not make transaction domestic). There is no allegation that Wells Fargo was a party to the transaction, had any independent economic interest in the transaction, or received any of the funds that the Trustee is seeking to avoid. Nor is there any allegation that Wells Fargo engaged in any other conduct that Congress sought to regulate in sections 547 and 548. Indeed, the Master Aircraft Finance Lease Agreements state on their face that Wells Fargo participated in these transactions "not in its individual capacity but solely as owner trustee" for the relevant parties. Condon Dec., Exs. A at Title Page, C at Title Page.

Likewise, the fact that the transaction involved an asset that might be used in (among other places) the United States is insufficient to turn a transfer of funds between non-U.S. entities from Singapore to Hong Kong into a domestic transaction. *Lyondell*, 543 B.R. at 132-34 (transfer among foreign entities in preparation for acquisition of a Delaware corporation headquartered in Houston was extraterritorial); *Maxwell*, 186 B.R. at 818 (U.K. company's transfer of funds from the sale of

U.S. assets to pay debts owed to U.K. and French entities was extraterritorial).

It is also irrelevant that UL and Glove filed proofs of claims in Zetta PTE's bankruptcy case. It is Zetta PTE's allegedly avoidable transfers, not UL's and Glove's filing of claims, that are "the 'focus' of congressional concern" in Sections 547, 548, and 550. *Morrison*, 561 U.S. at 266; *Ampal*, 562 B.R. at 613 (proof of claim could not be disallowed based on allegedly improper foreign transfer).[5] A statute applies extraterritorially only if "the affirmative intention of the Congress [is] clearly expressed to give a statute extraterritorial effect." *Morrison*, 561 U.S. at 255 (quotation omitted). A party cannot expand the scope of Sections 547, 548, and 550 beyond what Congress intended by filing a proof of claim. Moreover, the relevant agreements confirm that the parties did not intend to enter into a U.S. transaction. The Plane 6 and Plane 7 MAFLs are governed by Singapore law with jurisdiction in Singapore courts. Condon Dec., Exs. A at § 34.1, C at § 34.1. Because the conduct Congress sought to regulate in sections 547 and 548 of the Bankruptcy Code— the debtor's transfer of funds—involves foreign entities transferring funds from and to foreign bank accounts pursuant to agreements under Singapore law—the Trustee cannot plausibly allege the transfers "touch and concern the territory of the United States … with sufficient force to displace the presumption against extraterritorial application" of U.S. laws. *CIL Ltd.*, 582 B.R. at 95 (quotation and citation omitted).

## 2.   Minsheng Transaction.

The Trustee also seeks to avoid $55 million in payments to UL at the closing of the Minsheng Transaction in September 2016. Compl. ¶ 106.[6] Again, this is not a domestic transaction. As with the initial acquisition of Plane 6 and Plane 7, the parties in the Minsheng Transaction are foreign

---

[5] Pre-*Morrison* dictum in *Diaz-Barba* states that "when a party affirmatively invokes the jurisdiction of the bankruptcy court, the presumption against extraterritoriality does not apply to that party" is incorrect. *Diaz-Barba v. Kismet Acquisition, LLC*, No. 08CV1446 BTM (BLM), 2010 WL 2079738, at *7 (S.D. Cal. May 20, 2010). *Diaz-Barba* relies on *In re Simon*, 153 F.3d 991, 997 (9th Cir. 1998), but the case does not support the dictum. *In re Simon* held that a creditor who participated in the bankruptcy case could be enjoined from violating a Section 524 discharge order. *Id.* Section 524 expressly empowers a court to enjoin an action to collect "property of the debtor of the kind specified in section 541(a)(2)," and such property is expressly defined to include property "wherever located." 11 U.S.C. §§ 524, 541. *In re Simon* thus upholds a court's exercise of power expressly authorized by Congress, but nothing in *In re Simon*, supports the notion that the doctrine of waiver allows a Court to expand a statute beyond the scope intended by Congress.
[6] In the Minsheng Transaction, Minsheng and Yuntian 3 purchased Plane 6 and Plane 7 from the UL Defendants and leased them to Zetta PTE. Compl. ¶¶ 106, 112.

UL DEFENDANTS' MOTION TO DISMISS ADVERSARY COMPLAINT

entities.[7]  The Trustee does not plead that the $55 million transferred from Minsheng to UL came from any source other than Minsheng.  The payments to UL were to be made for the benefit of UL's Hong Kong bank account.[8]  The agreements are governed by English law and require, with limited exception, all disputes arising from the agreements to be heard in English courts.[9]  Thus, all conduct that Congress sought to regulate under sections 547 and 548 occurred overseas by foreign entities.

Like the initial acquisition transfers, some tangential conduct surrounding the Minsheng Transaction touched the United States, such as the use of U.S.-based nominal trustees and, in *separate, subsequent transactions*, leases of the planes to U.S. entities.  Compl. ¶ 112.  But all of the conduct that Congress sought to regulate in enacting sections 547 and 548 of the Bankruptcy Code—Zetta PTE's allegedly avoidable prepetition transfer of funds—occurred outside of the United States by and for the benefit of Chinese, Singaporean, Hong Kong, and Irish entities.  Thus, the Trustee has no claim for avoidance under U.S. law.

The Trustee's attempt to avoid other transfers incidental to the Minsheng Transaction fail for the same reason.  For example, the Trustee alleges that Glove and Zetta PTE entered into a subsequent "Clarification" that Zetta PTE still had to repay its outstanding obligation on Plane 6.  Compl. ¶ 110.  The Trustee seeks to avoid $10 million of "Plane 6 Loan Transfers" allegedly paid to UL and Glove under this Clarification.  *Id.* ¶ 150.  But these transfers are likewise extraterritorial.  The Trustee also seeks to recover (as preferences) interest payments made by Zetta PTE on two loans from UL, a $10 million "First Loan" (Compl. ¶ 91) and a $10 million "Second Loan" (*id.* ¶¶ 118, 259).  But again, the Trustee fails to allege any facts to show loan payments between Singapore and BVI companies can be considered U.S. domestic transfers.  Because the Trustee does not, and cannot, plausibly allege that payments made to UL in the Minsheng Transaction or First and Second Loans were domestic activity, the Trustee fails to state a claim for avoidance of any transfers to UL in Counts I, II, IV, V and VII, as a matter of law.

---

[7] The Complaint identifies "Minsheng" as (1) Minsheng Financial, a Chinese company headquartered in Beijing, and (2) Minsheng Business, a Chinese company headquartered in Hong Kong.  *Id.* ¶¶ 41-42.  Yuntian 3 is an Irish company headquartered in Ireland.  *Id.* ¶¶ 41, 43.  Minsheng is "a Chinese state-owned aviation financing company."  *Id.* ¶ 97. Zetta PTE is a Singapore Company, and UL is a BVI company.
[8] Condon Dec., Exs. E at Sch. 2, F at Sch. 2.
[9] Condon Dec., Exs. E at § 11.3(a), F at § 11.3(a). The Trustee specifically relies on these agreements in the Complaint.  Accordingly, the provisions of such documents may be considered on this motion.  *See* n.4, *supra.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3.    The Third Loan.

In June 2017, UL made the Third Loan, a $15 million unsecured loan to Zetta PTE. Compl. ¶ 24.  In Count XIII, the Trustee seeks recharacterization of this loan as equity.  *Id.* ¶ 311.  Once again, the Trustee fails to allege any facts showing that the Third Loan was a domestic transaction.  To the contrary, UL (a BVI company) loaned $15 million to Zetta PTE (a Singapore company), and TGG (a BVI company), received additional shares of Zetta PTE's stock from other shareholders.  Compl. ¶¶ 126, 129.  The Third Loan is governed by Hong Kong law.  Condon Dec., Ex. G § 16.[10]  It was made between foreign entities, and there is no allegation of U.S. transfers in connection with the Third Loan.  Recharacterization of the Third Loan is not within the powers Congress enacted in section 105(a), and this claim should be dismissed.

### C.    International Comity Requires Dismissal of the Trustee's Claims.

The Trustee's claims against the UL Defendants should also be dismissed under the doctrine of international comity.  As shown above, each of the transactions at issue is foreign, and governed by Singapore, English, or Hong Kong law.  Condon Dec., Exs. A at § 34.1, B at §34.1; E at § 11.3(a), F at § 11.3(a); and G § 16.  These laws substantially conflict with U.S. law on critical issues, including the so-called "Ponzi-scheme" presumption, the unavailability of profits disgorgement, a specific intent requirement for preference claims, and recharacterization.  It would be inconsistent with the well-established international comity doctrine to apply U.S. law to these transactions, and there are alternative forums available in Singapore (where the Trustee has a pending ancillary proceeding), England, and Hong Kong.[11]

## II.    The Complaint Fails To State Fraudulent Transfer Or Preference Claims.

Even if the Court were to hold that sections 547, 548, 550, 502, and 105(a) of the Bankruptcy Code can be extraterritorially applied, the Complaint fails to state facts sufficient to state avoidance claims against the UL Defendants under Rule 12(b)(6).  A motion to dismiss for failure to state a claim tests the legal sufficiency of a complaint.  *See In re Blue Earth, Inc.* No. 3:16-BK-30296-DM, 2019 WL 4929933, at *5 (B.A.P. 9th Cir. Oct. 2, 2019).  "To survive a motion to dismiss, a

---

[10] The Complaint relies on the Confirmatory Deed of Loan, so it is referenced here.  *See* n. 4, *supra*.
[11] To avoid repetition, the UL Defendants join in and adopt the arguments and evidence put forth by defendants Yuntian 3 Leasing Company, et al. with respect to the international comity doctrine in the Yuntian MTD.  *See* Yuntian MTD, pp. 17-22, Ex. A, Ex. B.

1    complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

2    plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*,

3    550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content

4    that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

5    alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The Court need not accept as true conclusory

6    statements, legal conclusions, and unwarranted inferences cast as factual allegations.  *See Twombly*,

7    550 U.S. at 555-57; *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

8    "[A] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

9    of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "Nor does a

10    complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.*

11    (quoting *Twombly*, 550 U.S. at 557).

12        **A.    Counts I and II Fail to State Fraudulent Transfer Claims.**

13        Count I alleges that the Original Plane 6 and Plane 7 Agreements (the "<u>Original Plane</u>

14    <u>Agreements</u>"), pursuant to which Zetta PTE leased the two aircraft, involved fraudulent transfers to

15    the UL Defendants under section 548.  *See* Compl. ¶¶ 171, 173.  Count II alleges fraudulent transfers

16    from the Minsheng Transaction.  *See* Compl. ¶¶ 183, 189.  But the Complaint relies on general,

17    conclusory statements for critical elements of the claims and rests on a purported U.S. law "Ponzi-

18    scheme" presumption, but without factual allegations justifying any such presumption.  And even if

19    this were a Ponzi scheme, the UL Defendants—the acknowledged victims of the purported scheme—

20    could not be held liable as a matter of law.

21        **1.    Intentional Fraudulent Transfer.**

22        To plead intentional fraudulent transfer, the plaintiff must allege facts showing that the debtor

23    made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud creditors.

24    11 U.S.C. § 548(a)(1)(A).  It may be possible to "infer fraudulent intent from the circumstances

25    surrounding the transfer, taking particular note of certain recognized indicia or badges of fraud."  *In*

26    *re Acequia, Inc.,* 34 F.3d 800, 806 (9th Cir. 1994).  Courts in the Ninth Circuit have identified

27    "badges of fraud," including:  actual or threatened litigation against the debtor; a purported transfer of

28    all or substantially all of the debtor's property; insolvency or other unmanageable indebtedness on the

part of the debtor; special relationship between the debtor and the transferee; and post-transfer

retention by the debtor of the property involved in a putative transfer. *Id.*; *see also In re Empire*

*Land, LLC*, No. 6:08-BK-14592-MH, 2016 WL 1371278, at \*4 (Bankr. C.D. Cal. Apr. 4, 2016)

(citing same factors); *In re GGW Brands, LLC*, 504 B.R. 577, 607-08 (Bankr. C.D. Cal. 2013)

(same).  "Fraudulent intent is most commonly inferred 'when an insolvent debtor makes a transfer

and gets nothing or very little in return.'"  *Empire Land*, 2016 WL 1371278, at \*4 (quoting *Kupetz v.*

*Wolf*, 845 F.2d 842, 846 (9th Cir.1988)).  A single badge of fraud is not sufficient to support actual

intent to defraud; instead, multiple badges of fraud are required to state a claim.  *See Acequia*, 34 F.3d

at 806 ("The presence of a single badge of fraud may spur mere suspicion; the confluence of several

can constitute conclusive evidence of actual intent to defraud, absent 'significantly clear' evidence of

a legitimate supervening purpose") (internal quotations omitted); *see also In re Singh*, 434 B.R. 298,

312 (Bankr. E.D.N.Y. 2010) ("The existence of multiple badges of fraud ... can constitute the

requisite clear and convincing evidence of actual intent to defraud."); *In re Fedders N. Am., Inc.*, 405

B.R. 527, 545 (Bankr. D. Del. 2009) (insolvency alone does not support presumption of fraud); *In re*

*Gluth Bros. Constr., Inc.*, 424 B.R. 368, 377 (Bankr. N.D. Ill. 2009) (insufficient consideration alone

does not support presumption of fraud).

    In pleading actual fraud, the complaint must meet "the heightened pleading standard for actual

fraud provided in Rule 9(b) of the Federal Rules of Civil Procedure. . . .  [The rule] requires a party

alleging fraud [under section 548(a)(1)(A)] to 'state with particularity the circumstances constituting

fraud . . . .'"  *In re Automated Fin. Corp.*, No. 1:08-BK-14339-MT, 2011 WL 10502417, at \*4

(Bankr. C.D. Cal. Jan. 25, 2011); *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180

(9th Cir. 2016) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010))

("Under [Federal] Rule 9(b), . . . the plaintiff must allege 'the who, what, when, where, and how of

the misconduct charged.'")); *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (Rule 9(b)

requires "plaintiffs to differentiate their allegations when suing more than one defendant" and

"inform each defendant separately of the allegations surrounding his alleged participation in the

fraud"); *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (complaint should be dismissed when

it "lump[s] multiple defendants together") (original alterations and citations omitted).  Broad

1    allegations that include no particularized supporting detail do not suffice.  *See Bly–Magee v.*

2    *California*, 236 F.3d 1014, 1018 (9th Cir. 2001).

3    The Trustee fails to plead actual fraud in Counts I and II with the particularity required

4    under Rule 9(b).  Indeed, the Complaint lacks facts supporting either (i) actual intent of Zetta PTE to

5    commit fraud or (ii) a "confluence" of badges of fraud.

6    **Count I**.  The Complaint contains no plausible factual allegations that Zetta PTE's actual

7    intent, when it entered into the Original Plane Agreements to lease two airplanes to operate its

8    business—nearly two years before bankruptcy—was to hinder, delay or defraud creditors.  The

9    Trustee pleads only a single conclusory statement:  that "Cassidy (and thus Zetta PTE) entered into

10   the Original Plane 7 Purchase Agreement and the Original Plane 6 Purchase Agreement with the

11   actual intent to hinder, delay, or defraud creditors.  This actual intent is evidenced by Cassidy's

12   fraudulent scheme to misappropriate funds for his personal use."  Compl. ¶ 171.

13   This conclusory allegation lacks any specific facts supporting *Zetta PTE's intent*, instead

14   relying solely on alleged misconduct *by Cassidy* to steal or otherwise misappropriate Zetta PTE's

15   funds for personal gain.  *See Kalisch v. Maple Trade Fin. Corp. (In re Kalisch)*, 413 B.R. 115, 131

16   (Bankr. S.D.N.Y. 2008) (*citing In re CBI Holding Co., Inc.*, 529 F.3d 432, 448 (2d Cir. 2008))

17   (officer's fraud is not imputed to the debtor where the officer's interests were adverse to and not for

18   the benefit of the debtor).  That an individual officer allegedly stole money from a debtor does not

19   state a claim that *the debtor* intended to hinder, delay or defraud creditors; in that case the debtor is

20   the victim of the fraud, and not the party acting with fraudulent intent.  "The focus of a Section

21   548(a)(1)(A) claim remains on the specific transfer and asks whether there was an actual intent to

22   defraud in making that transfer."  *In re Tribune Co. Fraudulent Conveyance Litig.*, No. 11MD2296

23   (DLC), 2019 WL 294807, at *33 (S.D.N.Y. Jan. 23, 2019).  General allegations that Cassidy stole or

24   otherwise misappropriated Zetta PTE's assets are not sufficient to show that Zetta PTE acted with

25   intent to defraud its creditors when it entered into a specific transaction—leasing two airplanes under

26   the Original Plane Agreements.  *See Grede v. UBS Sec., LLC*, 303 F. Supp. 3d 638, 671 (N.D. Ill.

27   2018) ("[G]eneral schemes are not sufficient: the Trustee is required to prove that the transfer itself

28   was made with fraudulent intent.").  The Trustee's allegations are inadequate to plead actual intent by

Zetta PTE to defraud creditors.

Nor does the Trustee adequately plead "badges of fraud" in Count I, under *Acequia.,* 34 F.3d at 806. There is no allegation of actual or threatened litigation against Zetta PTE in connection with or at the time of the Original Plane Agreements, nor any allegation that Zetta PTE transferred all or substantially all of its property in connection with its lease of the two planes. To the contrary, the Complaint alleges *UL* provided the funds to acquire the planes, and Zetta PTE made monthly lease payments over the succeeding seven months. Compl., ¶¶ 84, 88. There is also no allegation that Zetta PTE retained any property transferred by it under the Original Plane Agreements.

As to allegations of "insolvency or unmanageable debt" at the time of the Original Plane Agreements, the Trustee relies predominantly on generic, conclusory allegations. Compl. ¶¶ 72-78, 173. The only specific allegation is that in December 2015 Cassidy—the alleged perpetrator of a scheme to steal Debtor assets—predicted that "the Debtors would be more than $1.2 million in the red based on just the initial payments" for *seven aircraft*. Compl. ¶ 74. This allegation is far from sufficient to plausibly show insolvency at the time of the Original Plane Agreements.[12] Nor has the Trustee pleaded facts to show that Zetta PTE's debts exceeded its assets—the "traditional bankruptcy balance sheet test"—at the time of the Original Plane Agreements, two years before the bankruptcy filing. S*ee Blue Earth*, 2019 WL 4929933, at *6 (quoting *Akers v. Koubourlis (In re Koubourlis)*, 869 F.2d 1319, 1321 (9th Cir. 1989)); *see* 11 U.S.C. § 101(32)(A). "This test is codified at § 101(32)(A), which defines insolvency as a 'financial condition such that the sum of such entity's debts is greater than all of such entity's property, at fair valuation[.]'" *Blue Earth*, 2019 WL 4929933, at *6. Thus, a fraudulent transfer complaint must contain enough factual information to show that the debtor's liabilities exceeded assets at the time of the transfers. *See id.* (citations omitted). The Complaint fails to allege any such facts.

Finally, the Trustee pleads no facts establishing a "special relationship" between Zetta PTE and UL or Glove at the time of the Original Plane Agreements. The only relationship the Trustee alleges in December 2015 is the arms-length relationship created by the transaction—lessor and lessee, which does not constitute a "special relationship." *See Hwa Yon Cho v. HSBC Bank USA*,

---

[12] It is also irrelevant here; the Trustee is challenging the Original Plane Agreements involving *two aircraft*, neither of which required initial payments. *See id.* ¶¶ 79-88.

No. SACV 10-0142 DOC(RNBX), 2010 WL 11465293, at *3 (C.D. Cal. Apr. 26, 2010) ("Plaintiff

has failed to allege the requisite special relationship between the parties in order to support [fraud],

especially considering California courts typically do not treat the relationship between a borrower and

a lender, etc., as such a special relationship."); *In re ICPW Liquidation Corp.*, 600 B.R. 640, 675

(Bankr. C.D. Cal. 2019) (under Texas law, "'special relationships' do not include the relationship

between a lender and a borrower"); *see also Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th

26, 59, 77 Cal. Rptr. 2d 709, 960 P.2d 513 (1998) ("[A] business entity has no duty to prevent

financial loss to others with whom it deals directly").

     **Count II**.  Count II seeks to avoid the September 2016 Minsheng Transaction for Planes 6

and 7 which, as pleaded by the Trustee, were funded by $80 million from Minsheng, not Zetta PTE.

Compl. ¶ 106.  As with Count I, there are no facts plausibly showing fraudulent intent *by Zetta PTE*

in connection with the Minsheng Transaction, pursuant to which Minsheng's affiliate purchased two

airplanes from the UL Defendants, but rather that Cassidy allegedly "embezzled" funds from Zetta

PTE, after the transaction closed, to pay for his boat and condominium.  *Id.* ¶¶ 113-115.  These

allegations that Cassidy stole funds from Zetta PTE do not establish or even support an inference that

Zetta PTE entered into the refinancing transaction with the actual intent to defraud creditors.

     Count II is equally deficient in pleading badges of fraud.  There is no allegation of actual or

threatened litigation against Zetta PTE at the time of the Minsheng Transaction.  There is likewise no

allegation that Zetta PTE transferred all or substantially all of its property in connection with the

Minsheng Transaction.  On the contrary, Zetta PTE had continued use of Planes 6 and 7 before and

after the Minsheng Transaction—they were simply purchased by a Minsheng entity.  Compl. ¶ 112.

The Complaint alleges that *Minsheng* provided the funds to acquire the planes from the UL

Defendants (Compl. ¶ 106), Zetta PTE *received* the "remainder" of the proceeds, $12.4 million

(Compl. ¶¶ 97, 99, 101, 106), and Zetta PTE made $10.1 million in contractually-required monthly

lease payments over the succeeding twelve months (Compl., ¶¶ 149, 150).

     There is also no allegation that either Debtor retained property purportedly transferred by it

pursuant to the Minsheng Transaction.  Indeed, the Complaint lacks any coherent allegation that any

interest in property *of Zetta PTE* was transferred.  The Complaint alleges only that *Minsheng*

transferred funds and *the UL Defendants* transferred ownership of the planes.  *See* Compl. ¶ 99.

Zetta PTE remained lessee of the planes and received $12.4 million in cash.  The Complaint also fails

to allege a "special relationship" between the parties—either between Minsheng as the buyer of the

planes and the UL Defendants as the sellers, or Minsheng as the replacement lessor of the planes and

Zetta USA. *Id.* ¶¶ 106-08, 112.  As noted above, the relationship between a lessor and lessee, or a

borrower and lender, does not constitute a "special relationship."  *See* Section II.A.1, *supra*; *see*

Compl. ¶ 104-107.

Finally, the Complaint lacks any facts showing that Zetta PTE was balance sheet insolvent at

the time of the Minsheng Transaction—that is, at the time a Minsheng entity purchased the two

planes and leased them to Zetta PTE.  There are no facts regarding the value of Zetta PTE's assets or

liabilities at the time of the Minsheng Transaction.  Instead, the Trustee makes only vague, and

inadequate, allegations regarding the "Debtors'" (collective) current obligations and liquidity position

*at unspecified times*, and relies on a conclusory statement that the "Debtors' overdue trade payables

had increased and Zetta was behind on its bills."  Compl. ¶ 96.  *See In re Nirvana Rest. Inc.*, 337

B.R. 495, 506 (Bankr. S.D.N.Y. 2006) ("neither cash flow nor the ability to pay current obligations is

a factor in determining insolvency" under the balance sheet test) (citation omitted).  These allegations

fail because they do not contain facts showing "the Debtors'" balance sheet insolvency at the time of

the Minsheng Transaction, nor do they show balance sheet insolvency, at any time, of the transferor,

Zetta PTE.  The generic insolvency allegation is also undercut by the Complaint's allegations that

Zetta PTE was able to refinance obligations and obtain new infusions of cash when needed.  Compl.

¶¶ 65, 96-112, 126-131.  And whatever the financial condition of Zetta PTE, the Complaint has no

facts showing that it was worsened by the Minsheng Transaction which involved a transfer of money

by Minsheng and planes by UL—with Zetta PTE retaining use of the planes and receiving millions of

dollars in cash.  *Id.* ¶ 106.

The Trustee fails to plead facts with particularity under Rule 9(b) supporting either actual

intent to defraud creditors or badges of fraud on Counts I and II, and they should be dismissed.

## 2.    Constructive Fraudulent Transfer.

To plead constructive fraudulent transfer claims, a plaintiff must allege facts supporting the

following four elements:  **(1)** a transfer of an interest of, or incurrence of an obligation by, the debtor;

**(2)** the transfer occurred, or the obligation was incurred, within two years before the petition date; **(3)**

the debtor received less than reasonably equivalent value in exchange for such transfer or the

incurrence of such obligation; and **(4)** one of three alternatives:  **(i)** that the debtor was insolvent on

the date the transfer occurred or such obligation was incurred or became insolvent as a result thereof;

**(ii)** that the debtor was engaged in business for which any property remaining was an unreasonably

small capital; or **(iii)** that the debtor intended to incur or believed it would incur debts beyond its

ability to pay as such debts matured.  *See* 11 U.S.C. § 548(a)(1)(B).  "[A] constructive fraud claim

must satisfy Rule 8(a) and contain sufficient facts to establish that the claim is plausible."  *In re SCI*

*Real Estate Invs., LLC*, No. 2:11-BK-15975-PC, 2013 WL 1829648, at *6 (Bankr. C.D. Cal. May 1,

2013); *see also Iqbal*, 566 U.S. at 678.

### a.    Property Interest Transferred or Obligation Incurred.

The first element of a constructive fraudulent transfer requires a transfer of an interest in the

debtor's property or the incurrence of an obligation by the debtor.  In *Begier v. IRS*, 496 U.S. 53, 58

(1990), the Supreme Court explained that this is "best understood as that property that would have

been part of the estate had it not been transferred before the commencement of bankruptcy

proceedings."  Among the interests that are not property of the estate is property held by a non-

debtor.  *See Crystallex Int'l Corp. v. Petróleos de Venez., S.A.*, 879 F.3d 79, 81 (3d Cir. 2018) (a

transfer of property or interest held "by a non-debtor cannot be a 'fraudulent transfer.'").

The Complaint seeks to avoid and recover $55 million in cash proceeds transferred *by*

*Minsheng to UL* in the Minsheng Transaction. Compl. ¶ 191.  Yet the Trustee fails to plausibly allege

that Zetta PTE had any interest in the funds allegedly transferred from Minsheng to UL.  This failure

is fatal to the claim.  The Trustee's conclusory and unsupported allegation that "[t]he $55 million

transfer was a transfer of Zetta PTE's property," *id.*, is flatly contradicted by the Complaint's factual

allegations that Minsheng paid $55 million as consideration for its affiliate Yuntian 3's purchase of

Plane 7 from UL.  Compl. ¶¶ 106-07.  The facts pleaded in the Complaint thus make clear that the

transaction was between two non-debtors:  one party—Minsheng—paid the other—UL—for title to

an asset.  Indeed, the Trustee does not even plead facts showing that the funds flowed through Zetta

PTE.[13]  Because the funds paid by Minsheng to UL were not property of Zetta PTE, the Trustee has no basis to avoid and recover the transfer.  *See Crystallex*, 879 F.3d at 81.

### b.    Reasonably Equivalent Value.

A complaint must allege facts plausibly showing (1) the value of the interest being conveyed to the creditor and (2) the value of the interest conveyed to the debtor, both supported by the facts stating the basis of the valuations.  *See SCI*, 2013 WL 1829648, at *6; *see also Allstate Ins. Co. v. Countrywide Fin. Corp.*, 842 F. Supp. 2d 1216, 1226 (C.D. Cal. 2012) (sufficient allegations include what "the assets' "true" market value was," or "what the accounting value of the assets was").  The Complaint fails to allege lack of reasonably equivalent value in Counts I and II.

With respect to Count I, the Complaint relies on a conclusory allegation that "$100 million in initial loans at above-market interest rates [were provided] to purchase [the Planes]" and "[u]pon information and belief, Plane 6 and Plane 7 were worth less than the principal purchase prices set forth by these agreements, and the interest rates thereunder were well above market rate."  Compl. ¶¶ 65, 172.  This falls far short of what is required to allege lack of reasonably equivalent value.  *See SCI*, 2013 WL 1829648, at *6.  The Complaint contains no factual allegation of the value of each of the planes despite the Trustee having retained a leading aviation consulting firm nearly two years ago.[14]  The allegation also grossly mischaracterizes the transaction structure.  As evidenced by the Complaint itself, no "loans" were made to Zetta PTE to purchase the planes; instead UL owned and Glove purchased the planes from Bombardier and leased them to Zetta PTE.  Compl. ¶¶ 81-86.

The Trustee's allegation that the "financing" (presumably, a reference to the lease) was "above market" fails not only because it is conclusory—the Complaint contains no factual allegations regarding market terms for comparable "financings" (aircraft leases) nor any other facts plausibly showing that the terms were "above market"[15]—but also because the allegations are belied by the Trustee's own conduct in this bankruptcy case.  The Trustee sought to "restructure the economics of

---

[13] Instead, as the Yuntian defendants pointed out in their motion to dismiss, the funds flowed through Insured Aircraft Title Service, Inc., as conduit.  *See* Yuntian MTD at 8 [Docket No. 32].

[14] *See* Docket No. 448 (Dec. 1, 2017 Order).

[15] The Complaint does not plead any facts to support its conclusory allegation that the "interest rates" on the $100 million in "loans" were above market.  Compl. ¶ 87.  The Complaint pleads no interest rates, nor does it contain any facts regarding the "market" interest rate for comparable loans.  In any event, as the facts alleged in the Complaint and the documents upon which the Complaint relies make clear, the transaction involved a lease to Zetta PTE, rather than a loan.

UL DEFENDANTS' MOTION TO DISMISS ADVERSARY COMPLAINT

the Debtors' fleet of aircraft" and reject "above market" aircraft leases in November 2017,[16] but he

did not include either Plane 6 or Plane 7 in the "above market" category.[17]  Now, in his Complaint,

the Trustee takes the opposite position, contending—without factual support—that the Plane 6 and

Plane 7 leases were above market.

Even if Zetta PTE had purchased the planes (it did not), well-pleaded factual allegations of the

planes' value would be essential to stating a claim based on a purported lack of reasonably equivalent

value.  *See SCI, LLC*, 2013 WL 1829648, at *6.  But the Trustee alleges merely on "information and

belief" that "Plane 6 and Plane 7 were worth less than the principal purchase prices."  *See* Compl. ¶

172.[18]  The Trustee does not plead the value of the planes or the purchase prices.  This omission is not

surprising, since the Zetta PTE did not purchase the planes, but instead leased them, as the Complaint

acknowledges (Compl. ¶ 86) and the documents upon which it relies make clear.

With respect to Count II, which challenges the Minsheng Transaction, the Trustee alleges no

facts regarding (i) the consideration received by Zetta PTE, including the value of use of the planes;

(ii) the terms on which Zetta PTE leased the planes prior to the Minsheng Transaction; or (iii) the

terms on which the Zetta Jet BVI entities leased, and Zetta USA sub-leased, the planes following the

Minsheng Transaction.  *See* Compl. ¶¶ 97, 106, 112.  The Trustee alleges no facts showing that the

new leases were unfavorable to the non-debtor Zetta Jet BVI lessee entities, or Zetta USA as

sublessee, either standing alone or comparison to the leases in effect prior to the Minsheng

Transaction.  The Trustee also neglects to mention in this Count the substantial cash "proceeds"

received by Zetta PTE in the Minsheng Transaction.[19]

Moreover, while the Complaint claims that $20 million in "incremental debt" (perhaps a

reference to aircraft lease obligations to Minsheng- affiliate Yuntian 3, though the Complaint is

unclear) was incurred as a result of the Minsheng Transaction, *see* Compl. ¶ 97, there are no

allegations regarding the terms of that "debt"—term/maturity, payment obligations, the purchase

---

[16] *See* Docket No. 425 (Nov. 22, 2017 Status Report) at pp. 3-4.

[17] *See* Docket No. 359 (Nov. 13, 2017 Motion).

[18] Speculation is insufficient to state a claim.  *See Miller v. City of Los Angeles*, No. CV 13-5148-GW(CWX), 2014 WL 12610195, at *5 (C.D. Cal. Aug. 7, 2014) ("[A] plaintiff cannot avoid Rule 12 simply by slapping the 'information and belief' label onto speculative or conclusory allegations.").

[19] That amount—$12.4 million—is evident from other allegations and the from purchase agreements themselves  *See* Compl. ¶¶ 99, 106; Condon Dec. Ex. E, Sch. 2; Ex. F, Sch. 2.

option, or the value of that option—nor how those terms compared to market terms.  Nor are there any allegations regarding the value to Zetta USA of the right to continued use of the planes that was granted for the incurrence of such "debt."  Allegations regarding a purported lack of reasonably equivalent value cannot focus solely on the obligation incurred (here, by non-debtor Zetta Jet BVI entities, according to the Complaint), but also the value of what was received in exchange for the incurrence of that obligation.  *See Allstate*, 842 F. Supp. 2d at 1226 (analysis of reasonably equivalent value should include any benefit obtained by the debtor from use of transaction proceeds "to pay off debt, increase working capital, and otherwise allow [a debtor] to remain in business.").

The only support the Trustee provides in connection with his claim are vague statements that the Minsheng Transaction was "tremendously unfair," *see* Compl. ¶ 97, and that "[u]pon information and belief, Plane 6, Plane 7, and other consideration received were worth less than the total amount of debt the Debtors incurred under such transactions and, by reason of the transactions thereunder, the Debtors incurred additional incremental debt obligations that could never be repaid."  Compl. ¶ 186. These conclusory statements, which essentially parrot the elements of the statute, are insufficient to allege lack of reasonably equivalent value under applicable law.  *See SCI*, 2013 WL 1829648, at *6; *Allstate*, 842 F. Supp. 2d at 1226.

### c.    Transferor's Financial Condition.

A constructive fraudulent transfer claim requires sufficient allegations as to the financial condition of the debtor, that is, that the debtor was balance sheet insolvent, had unreasonably small capital, or was equitably insolvent.  11 U.S.C. § 548(a)(1)(B)(ii)(I)-(III).  The Trustee fails to allege facts showing any of these financial conditions existed.

### (i)    Insolvency.

"A debtor is insolvent when its debts exceed its assets—the 'traditional bankruptcy balance sheet test.'" *Blue Earth*, 2019 WL 4929933, at *6 (quoting *Koubourlis,* 869 F.2d at 1321).  The Trustee has failed to plead facts showing insolvency at the date of each challenged transaction.

Count I fails to plead the fair value of either Debtor's assets and liabilities at the time of the Original Plane Agreements.  Instead, the Trustee relies on allegations that rates charged by "the Debtors" (in reality, Zetta USA) for block-hour and on demand charters fell below a business plan

allegedly prepared by Cassidy. *See* Compl. ¶¶ 68-69. And there are vague assertions that actual costs outpaced projections, with no dollar figures provided. *Id.* ¶¶ 70-71. These allegations do not come close to showing insolvency. In lieu of facts, the Trustee relies on conclusory assertions that "the Debtors were insolvent almost from inception," that "the Debtors' overdue trade payables exploded," *id.* ¶ 73, and relies on a prediction by Cassidy, who the Trustee accused of fraud and theft, that the Debtors "would be more than $1.2 million in the red..." based on certain projections. *Id.* ¶ 74.

These vague statements, predictions and blurry snapshots of aspects of the Debtors' operations, as of unspecified dates, and without distinguishing between the two separate Debtors, provide no plausible basis to conclude that Zetta PTE was insolvent as of the date of the Original Plane Agreements. General statements about the Debtors' current obligations and trade payables are not sufficient to plead insolvency. *See Nirvana*, 337 B.R. at 506.

Count II also fails to plead the fair value of Zetta PTE's assets and liabilities at the time of the Minsheng Transaction. Instead, the Complaint relies on contemporaneous correspondence among Cassidy, Li Qi, Seagrim and Walter. *See* Compl. ¶¶ 77, 100, 102-103. These allegations do not contain *facts* about either Debtor with respect to cash on hand, outstanding accounts receivable, the value of the planes, the value of any other planes in the fleet, current or long-term liabilities, *or any other asset or liability that would be disclosed on a balance sheet. See Blue Earth*, 2019 WL 4929933, at *6 (trustee's failure to articulate amounts of debtor's assets and liabilities did not plead sufficient facts to establish insolvency). The Trustee again relies on vague allegations that "the Debtors were once again out of cash" and that the "Debtors' overdue trade payables had increased and [Zetta PTE] was behind on its bills." Compl. ¶ 96. Allegations of current obligations and trade payables are not sufficient to plead insolvency. *See Nirvana*, 337 B.R. at 506.

### (ii)    Unreasonably Small Capital.

Alternatively, on a constructive fraudulent transfer claim the Trustee may plead facts supporting "the allegation that at the time of the transfers [the debtor] was engaged in or about to engage in business that would leave it with an unreasonably small capital." *See Blue Earth*, 2019 WL 4929933, at *7. "In determining unreasonably small capital, courts generally examine cash flow to determine whether it was 'reasonably foreseeable' that the transfer at issue would lead to the

debtor's 'inability to generate enough cash flow to sustain operations.'" *Id.* at *7 (quoting *Moody v. Sec. Pac. Bus. Credit, Inc.*, 971 F.2d 1056, 1070 (3d Cir. 1992); citing 5 COLLIER ON BANKRUPTCY ¶ 548.05[3][b] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2012)).  Capital "'should include ... all reasonably anticipated sources of operating funds, which may include new equity infusions, cash from operations, or cash from secured or unsecured loans over the relevant time period.'" *Blue Earth*, 2019 WL 4929933 at *7 (quoting *Moody*, 971 F.2d at 1072 n.24 (quoting Bruce A. Markell, *Toward True and Plain Dealing: A Theory of Fraudulent Transfers Involving Unreasonably Small Capital*, 21 Ind. L. Rev. 469, 496 (1988) (citing cases))).

A debtor's ability to obtain "cash infusions from officers" or "loans from creditors" coupled with a subsequent period of survival following the infusion is a sufficient indicator that a debtor had healthy cash flows and did not have unreasonably small capital.  *Blue Earth*, 2019 WL 4929933, at *8 (five-month period following a challenged investment constituted a sufficient survival period); *Moody*, 971 F.2d at 1074 (no unreasonably small capital where creditors were paid for twelve months after transaction); *In re Operations NY LLC*, 490 B.R. 84, 98 (Bankr. S.D.N.Y. 2013) (continued operations for ten months after the challenged transactions); *Credit Managers Ass'n of S. Cal. v. Fed. Co.*, 629 F. Supp. 175, 184 (C.D. Cal. 1985) (creditors paid for twelve months following challenged transaction)).

With respect to Count I, the Trustee fails to allege facts that show that Zetta PTE engaged in business that would leave it with unreasonably small capital in connection with the Original Plane Agreements.  To the contrary, the Complaint itself alleges that consideration was contemporaneously provided to Zetta PTE in the form of $100 million in "financing" (presumably, the December 2015 leases) from UL to provide aircraft to Zetta PTE in accordance with the Original Plane Agreements. *See* Compl. ¶ 65.  In addition, UL issued the First Loan ($10 million) to Zetta PTE and TGG made the First Investment ($19 million) in Zetta PTE less than two months after the execution of the Original Plane Agreements.  *See* Compl. ¶¶ 89, 91.  These substantial alleged financings and investments were followed by seven months of operations before the Minsheng Transaction in September 2016—a period that is certainly long enough to defeat allegations of unreasonably small capital under Ninth Circuit law.  *See Blue Earth*, 2019 WL 4929933, at *7.

1    Count II fails for the same reasons.  The Complaint alleges UL extended the $10 million

2    Second Loan to Zetta PTE just before the Minsheng Transaction, *see* Compl. ¶ 118, and that the

3    Debtors continued to operate for more than a year before the Petition Date.  These allegations

4    contradict an assertion that the Debtors had an unreasonably small capital at the time of the Minsheng

5    Transaction.  *See Blue Earth*, 2019 WL 4929933, at *7.

6                              **(iii)    Cash Flow Test (Equitable Insolvency).**

7           "Under the 'cash flow' or 'equitable' insolvency test, [the trustee has] to plead facts

8    supporting the allegation that at the time of the transfers [the debtor] intended to incur or believed that

9    it would incur debts beyond its ability to pay as they came due."  *Blue Earth*, 2019 WL 4929933, at

10   *9 (citing 11 U.S.C. § 548(a)(1)(B)(ii)(III)).  Courts in the Ninth Circuit have held that "if [a trustee]

11   failed to adequately plead unreasonably small capital, then he also failed to plead cash flow/equitable

12   insolvency."  *Blue Earth*, 2019 WL 4929933, at *9.  In addition, facts that show a debtor "was able to

13   pay its debts as they became due with cash infusions from its officers ... and by obtaining loans from

14   creditors" will support the position that a debtor had healthy cash flows and did not have

15   unreasonably small capital.  *See id*. at *8-9.

16          With respect to Counts I and II, for the same reasons noted above, the Trustee fails to allege

17   facts in support of equitable insolvency.  *Blue Earth,* 2019 WL 4929933, at *8-9.  The allegation that

18   the Debtors operated for seven months under the February 2016 loan from UL and investment from

19   TGG (Compl. ¶¶ 89-91) show that Zetta "was able to pay its debts as they became due with cash

20   infusions from its officers, by selling equity to investors, and by obtaining loans from creditors."

21   *Blue Earth,* 2019 WL 4929933 at *8-9.  This contradicts the Trustee's conclusory statement that the

22   Debtors had poor cash flows during both the execution and aftermath of the Original Plane

23   Agreements.  Compl. ¶ 173.  Accordingly, the Complaint fails sufficiently to allege either Debtor's

24   financial condition under the alternative insolvency tests for purposes of the constructive fraud

25   theories in Counts I and II.

26        **B.      The Trustee's Deficient Pleading of a "Ponzi-Like" Scheme Does Not Support a
                  Fraudulent Transfer Claim.**

27          It is unclear on the face of the Complaint whether the Trustee is alleging the existence of a

28   Ponzi scheme.  To the extent he is, the Trustee does not plead *any* facts showing the required

1    elements of a Ponzi scheme.  A Ponzi scheme requires "funnelling proceeds received from new

2    investors to previous investors in the guise of profits from the alleged business venture, thereby

3    cultivating the illusion that a legitimate profit-making business opportunity exists and inducing

4    further investment."  *Donell v. Kowell*, 533 F.3d 762, 767 n.2 (9th Cir. 2008) (quotations and citation

5    omitted).  In addition, "[t]he most common characteristic which appears to be almost invariable [in a

6    Ponzi scheme], is a promise of a high rate of return on the funds."  *In re LLS Am., LLC*, No. 09-

7    06194-PCW, 2013 WL 3305393, at *7-10 (Bankr. E.D. Wash. July 1, 2013).  "Although not usually

8    articulated in the reported decisions, the rate is 'high' in comparison to general market and economic

9    conditions then existing."  *Id.* at *7 (citing *Donell*, 533 F.3d at 766 (20 percent return every 90 days);

10    *In re Taubman*, 160 B.R. 964, 972 (Bankr. S.D. Ohio 1993) (typically 15 to 18 percent per annum);

11    and *Scholes v. Lehmann*, 56 F.3d 750, 752 (7th Cir. 1995) (10 to 20 percent per month return)).

12        The Trustee's "Ponzi-like" stratagem fails this test.  The facts pleaded do not show "the

13    illusion" of a real business, created to induce additional investments, but instead the existence of a

14    real business—a real charter jet company, with actual paying customers, that in fact operated its

15    business—albeit one that ultimately failed.  The facts pleaded also do not show that proceeds from

16    new investors were funneled to previous investors in the guise of profits, in order to induce new

17    investments.  In addition, there are no facts pleaded showing what "high rate" the UL Defendants (or

18    anyone) received in connection with any of the transactions, in order to induce additional

19    infusions.  *See LLS Am.*, 2013 WL 3305393, at *7.  Instead, the Trustee makes only conclusory

20    statements, devoid of facts, regarding alleged "exorbitant" or "high" returns promised or

21    granted.  Moreover, the Complaint alleges only one investor—Li Qi (an apparent reference to the UL

22    Defendants, for which Li Qi served as Director).  *See* Compl. ¶ 79 ("Li Qi was Zetta PTE's first (and

23    ultimately only) outside investor.").  Finally, the Complaint contains no factual allegations tying the

24    challenged transactions to the alleged "Ponzi-like" scheme.  *See Automated Fin. Corp.*, 2011 WL

25    10502417, at *4 ("Although the complaint alleges that debtors and/or their principals were engaged in

26    a Ponzi scheme . . . , the Trustee has not pled any facts that tie together the intent with the specific

27    transfers being attacked.").

28        Even if the Trustee pleaded sufficient facts evidencing a Ponzi scheme, the Trustee cannot

recover any of the funds paid to the UL Defendants as a matter of law.  A victim-creditor is permitted

to *retain* all amounts paid to it in connection with a Ponzi scheme up to the amount it originally

provided to the debtor in connection with such scheme.  *See Donell*, 533 F.3d at 772-75 (holding that

at the moment where the payments by the debtor to the creditor exceeded the amount initially

invested by such creditor, *then* (i) such payments were avoidable and (i) the creditor was no longer a

creditor since his original investment was now paid in full).  "Payments up to the amount of the initial

investment are considered to be exchanged for 'reasonably equivalent value,' and thus not fraudulent,

because they proportionally reduce the investors' rights to restitution." *Id.* (citing *In re United

Energy Corp.*, 944 F.2d 589, 595 (9th Cir.1991); *see also Balaber-Strauss v. Sixty-Five Brokers* (*In re

Churchill Mortg. Inv. Corp.*), 256 B.R. 664, 682 (Bankr. S.D.N.Y. 2000), *aff'd*,  264 B.R. 303

(S.D.N.Y. 2001) ("[I]nvestors may retain distributions from an entity engaged in a Ponzi scheme to

the extent of their investments....").

The Complaint shows that the UL Defendants were the victims of the alleged scheme.  The

Complaint alleges that (i) Cassidy induced Li Qi to invest in a scheme, *see* Compl. ¶¶ 65-66

("Cassidy induced Li Qi" and "Li Qi's cash infusions gave Cassidy a source of funds to embezzle.");

(ii) the UL Defendants were the only investors, *see* Compl. ¶ 79 ("Li Qi was Zetta PTE's first (and

ultimately only) outside investor."); (iii) the transactions outlined in the Complaint were detrimental

to the UL Defendants, *see* Compl. ¶¶ 102, 128;[20] and (iv) the UL Defendants did not obtain the full

amount of their investment back.  *See* Compl. ¶ 128 (quoting Li Qi: "Until now, I invest the company

about 119m USD, so when Geoff [Cassidy] come to ask another 15m USD to be bridge money, I

don't agree, I have put one huge egg to one basket, big risk . . . .").[21]

The UL Defendants cumulatively lost over $78 million in the series of transactions with Zetta

---

[20] In the Trustee's Jetcraft Opp., the Trustee specifically states that "[t]he transactions were also
detrimental to the Debtor's investor, Li Qi. . . ." *See id.* at 17 n. 6.  In fact, the Trustee alleges that
the defendants in that proceeding facilitated, aided, and abetted Cassidy in his fraud and breaches of
fiduciary duty.  *See id*. at 1:6-10.  No such allegation is made in the Complaint as to the UL
Defendants, nor that they had knowledge of any fraud, and rightly so.  The UL Defendants were the
victims.

[21] In the Trustee's Jetcraft Opp., the Trustee states that Li Qi "was later able to extract a significant
amount of his investment through the disastrous Minsheng Refinancing transaction." *See id.* at 17
n.6.  Irrespective of whether the UL Defendants agree that a "significant" amount was returned to
them prior to Cassidy's scheme unfolding, the facts alleged by the Trustee that show the UL
Defendants did not recoup the full amount of their loans and investments in Zetta PTE are
undisputed.  This much the UL Defendants and the Trustee can agree on.

1  PTE alleged in the Complaint,[22] and as a result, even if facts supporting the existence of a Ponzi

2  scheme were alleged, they would be entitled to retain the proceeds of any transfers made to them in

3  connection with the Original Plane Agreements and Minsheng Transaction.  *See Donell*, 533 F.3d. at

4  595, n.6 (amounts received *in excess of* the original investment would be subject to avoidance under a

5  theory of constructive fraud); *see also In re Consol. Meridian Funds*, 487 B.R. 263, 272 (Bankr.

6  W.D. Wash. 2013) (interest payments constitute value to be retained by the victim investor so long as

7  such payments do not exceed the initial investment).  If these transactions are part of the Trustee's

8  "Ponzi-like" scheme, then the UL Defendants are entitled to retain all proceeds they received in the

9  transactions, as the payments provided do not come close to making them whole.

10  **C.    The Complaint Fails to State Preference Claims Under Counts IV, V, and VIII.**

11  The Trustee's preference claims against the UL Defendants in Counts IV, V and VIII are

12  deficient in several respects.  **<u>First</u>**, for the same reasons set forth in connection with Counts I and II,

13  there are no well-pleaded facts from which to plausibly infer that Zetta PTE was insolvent during the

14  period prior to 90 days before the Petition Date—the period when the Trustee has no presumption of

15  insolvency under Section 547(f) and when most of the allegedly preferential transfers to the UL

16  Defendants are alleged to have occurred.  *See* Sections II.A.1 and II.A.2.c.i *supra*.  **<u>Second</u>**, the

17  Trustee fails to allege facts to show the UL Defendants received more as a result of the alleged

18  preferential transfers than they would have under a hypothetical Chapter 7 liquidation.  **<u>Third</u>**, the

19  Complaint discloses a dispositive subsequent new value defense with respect to the $15 million Third

20  Loan made by UL to Zetta PTE in June 2017.  Compl. ¶ 131.  Even if the Trustee had sufficiently

21  alleged facts supporting preference claims, the subsequent new value defense under section 547(c),

22  which is evident from the face of the Complaint and therefore may be considered on a motion to

23  dismiss, would prevent avoidance of a substantial amount of the allegedly preferential transfers.

24  **1.    The Elements of a Preference Claim.**

25  The Trustee must allege facts showing that the debtor transferred an interest in its property

26  **(1)** to or for the benefit of a creditor; **(2)** for or on account of an antecedent debt owed by the debtor

27  before such transfer was made; **(3)** made while the debtor was insolvent; **(4) (a)** on or within 90

28  days before the date of the filing of the petition; or **(b)** between ninety days and one year before the

---

[22] *See* Proof of Claim Nos. 94 and 95 filed in the Debtors' Chapter 7 Cases.

date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(**5**) that enables such creditor to receive more than such creditor would receive if (**a**) the case were a

case under chapter 7 of this title; (**b**) the transfer had not been made; and (**c**) such creditor received

payment of such debt to the extent provided by the provisions of this title.  11 U.S.C. § 547(b).

### a.    Count IV Fails to State a Preference Claim.

The Complaint's allegations that the Plane 6 Loan Transfers are subject to avoidance under

section 547(b) of the Bankruptcy Code are insufficient as a matter of law because the Trustee fails to

plead facts to show (ii) that the Debtors were insolvent at the time of each transfer; and (ii) that UL or

Glove received more than they would have in a Chapter 7 liquidation.

### (i)    Failure to Adequately Allege Insolvency.

"An avoidable preference under § 547 includes *balance sheet insolvency* as one of its

elements."  *In re AWTR Liquidation Inc.*, 548 B.R. 300, 312 (Bankr. C.D. Cal. 2016) (emphasis

added).  As shown above in Sections II.A.1 and II.A.2.c.i, the Trustee has failed to adequately allege

insolvency at any time relevant to the transfers that are the subject of the Complaint.  Specifically,

there are no allegations supporting balance sheet insolvency for the period from August 1, 2016

through the Petition Date.  Accordingly, the Trustee has failed to allege facts supporting insolvency.

### (ii)    Failure to Adequately Allege a Greater Recovery Than Under Chapter 7 as a Result of Alleged Preferences.

Under section 547(b)(5) of the Bankruptcy Code, a trustee must plead facts showing that the

alleged preferential transfer enabled the transferee to receive more than it would have recovered

under Chapter 7.  He cannot simply assert this as a conclusion.  Instead, to satisfy this requirement,

the complaint must include, *inter alia,* factual "allegations regarding the Debtor's assets and

liabilities on the petition date."  *Operations NY LLC*, 490 B.R. at 102.  Where, as in this case, a

plaintiff does not allege any "facts relating to a Chapter 7 Trustee's potential distribution to creditors"

and instead relies on "threadbare recitals" to match the elements of section 547(b) of the Bankruptcy

Code, the allegations are not sufficient to state a preference claim and it is appropriate to grant a

motion to dismiss.  *In re Groff*, No. 11-00329-8-RDD 2011 WL 6140744, at *4 (Bankr. E.D.N.C.

Dec. 9, 2011).

The Complaint here omits any factual allegations concerning the value of either Debtor's

assets or liabilities, nor does it allege other facts from which one could plausibly infer what the UL

Defendants would have received if the payments sought to be avoided had not been made and Zetta

PTE had been liquidated under Chapter 7.  The Complaint instead relies on a cursory statement that

"a review of the Debtors' schedules and proofs of claim filed in its bankruptcy cases show that

general unsecured creditors will not be paid in full."  Compl. ¶ 218.  However, reference to the

Debtors' schedules is not sufficient to meet the Trustee's section 547(b)(5) pleading burden—

certainly not in this case where the Trustee has acknowledged that the schedules are incomplete and

unreliable.  As the Trustee stated:

> Debtors' prior management … has prepared the Schedules and Statements based upon,
> in part, uncertain and unreliable information due to asserted fraud, malfeasance,
> misappropriation, breach of fiduciary duty, and other improper acts committed by a
> former insider to the Debtors … although reasonable efforts were made to ensure the
> accuracy and completeness of such financial information, as set forth above, much of
> the information relied upon may very well be incorrect and unreliable given the
> asserted fraudulent financial information included in the books and records … the
> former employees of the Debtors who are most knowledgeable about the Debtors'
> financial affairs and the matters to be included in the Schedules and Statements were
> not available to finalize the information in the Schedules and Statements, the Debtors'
> books and records were not reconciled or closed, and the Chapter 7 Trustee has done
> his best to utilize available information to complete the Schedules and Statements to the
> best of his ability … the Schedules and Statements are based on information that may
> not be reliable and the Schedules and Statements are therefore incomplete.[23]

The schedules also omit litigation claims which may be a significant source of recoveries.  For

example, the Trustee recently settled a single adversary proceeding for $15 million, which is not

accounted for on the schedules.[24]

The Trustee was appointed over two years ago.  He has been in exclusive possession of the

Debtors' books and records, has hired experts, and had obtained extensive Rule 2004 discovery.[25]  In

these circumstances, the Trustee does not meet his pleading burden to show that an alleged preference

recipient received more than it would have received in a Chapter 7 liquidation simply by referencing

schedules that omit material assets and that the Trustee himself has stated are "uncertain,"

"unreliable," and "may very well be incorrect."

---

[23] *See* Docket No. 491 (Dec. 18, 2017 Global Notes) at p. 2-3.
[24] *See* Docket No. 1129 (Dec. 9, 2019 Settlement Motion).
[25] *See, e.g.*, Docket No. 836 (Oct. 23, 2018 Order for Rule 2004 Examination); Docket No. 910
(March 29, 2019 Order Authorizing Examination of Yuntian 3 Leasing Company Limited and
Yuntian 4 Leasing Company Limited); Docket No. 942 (May 31, 2019 Order Pursuant to FRBP
2004 Authorizing Trustee to Issue Subpoenas to Bombardier Inc.).

**b.** **The Complaint Fails to State a Preference Claim under Count V.**

The Trustee's bizarre attempt to recover $55 million of Minsheng's funds used to acquire title to the UL Defendants' planes cannot be accomplished through a preference claim. **First**, the Trustee pleads no facts—beyond a bare conclusory assertion—to show that either Debtor owned any interest in the $55 million allegedly transferred funds. For the same reasons set forth above in Section II.A.2.a, Zetta PTE did not own the transferred funds, Minsheng did. **Second**, for the reasons set forth in Section II.A.2.c.i, the Trustee fails to plead facts showing balance sheet insolvency of the transferor entity at the time of the $55 million transfer by Minsheng. **Third**, for the reasons set forth in Section II.C.1.a.ii above, the Trustee does not plead facts sufficient to plausibly show that UL received more than what it would have in a Chapter 7 liquidation. Count V should be dismissed.

**c.** **Count VIII Fails to State a Preference Claim.**

The Trustee alleges in this Count that interest payments made by Zetta PTE in connection with the First Loan and Second Loan are subject to preference avoidance under section 547(b). Compl. ¶ 265. However, as discussed in Section II.A.2.c.i, the Trustee fails adequately to allege Zetta PTE was insolvent at the time of the challenged transfers, *see Blue Earth*, 2019 WL 4929933, at *6, or to demonstrate that the UL Defendants received more than they would have obtained in a Chapter 7 liquidation. *See In re Caremerica, Inc.*, 409 B.R. 346, 352 (Bankr. E.D.N.C. 2009); *Groff*, 2011 WL 6140744, at *4. Accordingly, Count VIII should be dismissed.

**2.** **Affirmative Defense to Preference Claims - New Value.**

"[A] cause of action may be dismissed upon consideration of an affirmative defense . . . where the affirmative defense's applicability to the cause of action is apparent on the face of the complaint." *Dawe v. Corr. USA*, No. CIV S-07-1790 LKK/EF, 2009 WL 1420969, at *9 (E.D. Cal. May 20, 2009) (citing *Guam Inv. Co. v. Cent. Bldg., Inc.*, 288 F.2d 19, 24 (9th Cir.1961)). Here, the face of the Complaint reveals an affirmative subsequent new value defense under section 547(c)(4) with respect to a substantial amount of the alleged preferential transfers.

Under section 547(c)(4), a trustee may not avoid a transfer under section 547(b) "to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—(A) not secured by an otherwise unavoidable security interest; and (B) on account of which new value the

1    debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor ...."  11

2    U.S.C. § 547(c)(4).  New value includes "money or money's worth in goods, services, or new

3    credit...."  11 U.S.C. § 547(a)(2).  Creditors may carry forward preferences until they are exhausted

4    by subsequent advances of new value.  *DeGiacomo v. Draper Knitting Co., Inc. (In re Jannel Indus.,*

5    *Inc.)*, 245 B.R. 757, 761 (Bankr. D. Mass. 2000) (*citing In re IRFM*, 52 F.3d 228, 232 (9th Cir.

6    1995)).

7            The Trustee asserts that Zetta PTE made $8.5 million in Plane 6 Loan Transfers to the UL

8    Defendants, *see* Compl. Sch. A, and $2.3 million in Interest Payment Transfers.  *See* Compl. Sch. D.

9    The Complaint alleges that on June 27, 2017, UL advanced $15 million to the Debtors pursuant to the

10   Third Loan.  *See* Compl. ¶¶ 126, 130-131.  There is no allegation in the Complaint that such

11   financing was on account of an existing obligation.  Accordingly, the Third Loan constitutes new

12   value under section 547(a)(2), and can be applied as a subsequent new value defense against all

13   alleged preferential transfers made before June 27, 2017.

14           The $15 million Third Loan exceeds nearly all prior Plane 6 Loan Transfers and Interest

15   Payment Transfers made to the UL Defendants.  As detailed in <u>Appendix A</u>, which is based on the

16   Trustee's Schedules to the Complaint, all Plane 6 Loan Transfers and Interest Payment Transfers

17   made by Zetta PTE to the UL Defendants before June 27, 2017 total $10,587,377.00.[26]  Accordingly,

18   even if allegations as to the other elements of Counts IV and VIII satisfied Rule 12(b)(6)—and they

19   do not—the subsequent new value defense precludes avoidance of all Plane 6 Loan Transfers and

20   Interest Payment Transfers made before the issuance of the Third Loan.

21   **III.    The Complaint Fails to State a Claim for Recharacterization of the Third Loan.**

22           The Trustee asserts that the Third Loan from UL is "really an equity investment," Compl.

23   ¶ 309, and requests that this Court recharacterize the Third Loan "pursuant to 11 U.S.C. § 105(a) as

24   an equity interest based on numerous factors ...."  Compl. ¶ 311.  The Ninth Circuit, however, has

25   explicitly held that "courts may not rely on § 105(a) and federal common law rules 'of [their] own

26   creation' to determine whether recharacterization is warranted."  *Fitness Holdings*, 714 F.3d at 1148

27   (citing *Butner v. U.S.*, 440 U.S. 48, 55 (1979)).  Instead, courts must look to applicable non-

28

[26] The balance of the UL Defendants' $15 million of new value would offset the Trustee's
otherwise meritless preference claim for $55 million in Minsheng Transaction proceeds (Count V).

1    bankruptcy law governing the contested claim to determine whether it affords the creditor a right to

2    payment.  *See id.*

3       To determine the applicable non-bankruptcy law, the Ninth Circuit has held that "[i]n a

4    bankruptcy case, the court must apply federal choice of law rules," which "follow the approach of the

5    Restatement (Second) of Conflict of Laws."  *In re Vortex Fishing Sys., Inc.*, 277 F.3d 1057, 1069 (9th

6    Cir. 2001) (citing *Chuidian v. Philippine Nat'l Bank*, 976 F.2d 561, 564 (9th Cir.1992)).  Under the

7    Restatement, if the claim is based on an instrument, then the governing law under such instrument

8    will be the applicable non-bankruptcy law.  *See* Restatement (Second) of Conflict of Laws § 187

9    (1989); *see also Vortex*, 277 F.3d at 1069 (holding that if the claims of the party arise under an

10   agreement, then the law controlling such agreement will apply).  This principle has been applied

11   specifically in the context of bankruptcy court recharacterization disputes.  *See, e.g.*, *In re Lothian Oil*

12   *Inc.*, 650 F.3d 539, 544 (5th Cir. 2011) (Texas law was the appropriate law to examine in a

13   recharacterization dispute because it controlled the agreements underlying the disputed claims) (cited

14   by *Fitness*, 714 F.3d at 1149).

15      The Third Loan, which the Trustee seeks to recharacterize, was made pursuant to the

16   Confirmatory Deed of Loan.  *See* Compl. ¶ 311.  The Confirmatory Deed of Loan is governed by

17   Hong Kong law.  Condon Dec., Ex. G § 16; *see* n.4, *supra*.  The Trustee fails to plead facts

18   supporting a claim for recharacterization under Hong Kong law.  Accordingly, the Trustee's claim for

19   recharacterization of the Third Loan should be dismissed.[27]

20   **IV. The Complaint Fails to State a Claim for Violation of the Automatic Stay.**

21      The Trustee alleges TGG violated section 362 of the Bankruptcy Code by filing the Singapore

22   Injunction Action.  However, the Complaint fails to allege how the Singapore Injunction Action

23   violated any of the eight subsections of section 362(a):

24     •  Section 362(a)(1) of the Bankruptcy Code prohibits commencement or continuation of an

25   action against a debtor that was or could have been commenced prior to the cases to recover a claim

26   from the debtor.  The Trustee does not allege the Singapore Injunction Action could have been

27

28
   [27] Even if Bankruptcy Code § 105, and factors utilized thereunder, were a valid basis, in the Ninth Circuit, for recharacterizing a debt obligation as equity, the Trustee fails to plead facts showing that recharacterization would be appropriate.

UL DEFENDANTS' MOTION TO DISMISS ADVERSARY COMPLAINT

commenced prior to the Petition Date or that the Singapore Injunction Action was commenced to recover a claim against Zetta PTE.

- Section 362(a)(2) prohibits enforcement of a prepetition judgment against a debtor.  The Complaint does not allege the Singapore Injunction Action sought to enforce a prepetition judgment.

- Section 362(a)(3) prohibits acts to obtain possession of property of the estate or to exercise control over such property.  The Complaint does not allege that the Singapore Injunction Action sought to obtain or exercise control over Zetta PTE's property, or that it had any effect whatsoever on Zetta PTE.  In the single paragraph of the Complaint in which there are allegations as to the purported purpose of the Singapore Injunction Action, the Complaint alleges only the temporary impact of the injunction on certain actions by the Trustee.  Compl. ¶¶ 164, 316.[28]

Accordingly, Count XIV fails to state a claim for violation of the automatic stay.

**V.      Count XV for Disallowance of the UL Defendants' Claims Must be Dismissed.**

The Trustee seeks disallowance of the UL Defendants' claims in Zetta PTE's bankruptcy case.  But the Section 502(d) remedy only applies if the Trustee establishes an avoidable transfer or turnover claim.  Because none of the Trustee's underlying counts against the UL Defendants pleads a plausible claim, Count XV for claim disallowance should also be dismissed.

Dated:  December 20, 2019              ARNOLD & PORTER KAYE SCHOLER LLP


                                       By:    /s/ *Brian K. Condon*
                                               Brian K. Condon (Bar No. 138776)
                                               Oscar Ramallo (Bar No. 241487)
                                               Attorneys for Defendants
                                               Universal Leader Investment Limited, Glove
                                               Assets Investment Limited, and Truly Great
                                               Global Limited

---

[28] As to the remaining subsections of section 362(a), there are no allegations that any lien was created, perfected, or enforced against property of the Debtors or in furtherance of a prepetition claim (§ 362(a)(4-5)); that TGG was seeking to collect, assess, or recover a claim against the Debtors (§ 362(a)(6)); that TGG sought to set off any debt owing to the Debtors (§ 362(a)(7)); or that the action related to any proceeding before the United States Tax Court (§ 362(a)(8)).

## APPENDIX A

### Schedule of Payments

| Date of Transfer Alleged in Compl. | Plane 6 Loan Transfers per Compl. Schedule A | Interest Payment Transfers per Compl. Schedule D |
|---|---|---|
| 8/1/2016 | $780,671.00 | |
| 8/30/2016 | $780,671.00 | |
| 9/16/2016 | | $83,333.00 |
| 10/3/2016 | $780,671.00 | |
| 10/14/2016 | | $583,333.00 |
| 10/31/2016 | $780,671.00 | |
| 11/15/2016 | | $83,333.00 |
| 11/30/2016 | $780,671.00 | |
| 12/28/2016 | | $83,333.00 |
| 1/6/2017 | $780,671.00 | |
| 1/19/2017 | | $83,333.00 |
| 2/2/2017 | $780,671.00 | |
| 2/17/2017 | | $583,333.00 |
| 3/7/2017 | $780,671.00 | |
| 3/16/2017 | | $83,333.00 |
| 4/11/2017 | $780,671.00 | |
| 4/20/2017 | | $83,333.00 |
| 5/2/2017 | $780,671.00 | |
| 5/19/2017 | | $166,666.00 |
| 6/2/2017 | $780,671.00 | |
| 6/16/2017 | | $166,666.00 |
| **Total Transfers to Date = $10,587,377.00** | **$8,587,381.00** | **$1,999,996.00** |
| **06/27/2017 - $15,000,000 Third Loan Advance** | | |
| **06/27/2017 - Alleged Preference Liability** | **$0** | **$0** |
| 7/3/2017 | $780,671.00 | |
| 7/17/2017 | | $166,666.00 |
| 7/31/2017 | $780,671.00 | |
| 8/15/2017 | | $166,666.00 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Arnold & Porter Kaye Scholer, 777 South Figueroa Street, Forty-Fourth Floor, Los Angeles, CA 90017-5844

A true and correct copy of the foregoing document entitled (*specify*): ***DEFENDANTS UNIVERSAL LEADER
INVESTMENT LIMITED, GLOVE ASSETS INVESTMENT LIMITED, AND TRULY GREAT GLOBAL
LIMITED MOTION TO DISMISS COUNTS I, II, IV, V, VIII, XIII, XIV, & XV OF ADVERSARY
COMPLAINT*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-
2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
December 20, 2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

United States Trustee        ustpregion16.la.ecf@usdoj.gov

Yuntian 3 Leasing Company Designated    jmester@jonesday.com; dtmoss@jonesday.com;
Activity Company f/k/a Yuntian 3 Leasing
Company Limited and Yuntian 4 Leasing
Company Designated Activity Company
f/k/a Yuntian 4 Leasing Company Limited

Jonathan D. King as Chapter 7 Trustee    john.lyons@us.dlapiper.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) December 20, 2019, I served the following persons and/or entities at the last known addresses in this
bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United
States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that
mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) December 20, 2019, I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/20/19 | Vicky Apodaca | /s/ Vicky Apodaca |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

             **F 9013-3.1.PROOF.SERVICE**

## SERVICE LIST

## SERVICE BY NOTICE OF ELECTRONIC FILING (NEF)

**United States Trustee**                              ustpregion16.la.ecf@usdoj.gov

**Yuntian 3 Leasing Company Designated**          jmester@jonesday.com
**Activity Company f/k/a Yuntian 3 Leasing**
**Company Limited and Yuntian 4 Leasing**
**Company Designated Activity Company f/k/a**
**Yuntian 4 Leasing Company Limited**

**Jonathan D. King as Chapter 7 Trustee**

                                                 john.lyons@us.dlapiper.com

## SERVICE BY UNITED STATES MAIL

Export Development Canada Limited          Minsheng Business Aviation Limited
Attn: Jeff Blattman                        Rooms 2201-03, 22/F
150 Slater Street                          World-Wide House
Ottawa, Ontario, Canada K1A 1K3            19 Des Voeux Road Central
                                           Hong Kong

Minsheng Financial Leasing Co., Ltd.       Honorable Sandra R. Klein
Floor 3-6 , Distinguished Guest Building   United States Bankruptcy Court
Beijing Friendship Hotel                     for the Central District of California
One South Zhongguancun Street              255 East Temple Street, Suite 1582
HaidianHaidian District                    Los Angeles, CA 90012
Beijing, 100873

and

Zhongguancun South Street
Beijing Friendship Hotel Guest House 1 2-6
Beijing, 100873

Ron Maroko
Office of the United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## SERVICE BY ELECTRONIC MAIL

**Yuntian 3 Leasing Company Designated Activity Company f/k/a Yuntian 3 Leasing Company Limited and Yuntian 4 Leasing Company Designated Activity Company f/k/a Yuntian 4 Leasing Company Limited**

Attn:    David S. Torborg
Email:   dstorborg@jonesday.com

Attn:    Daniel T. Moss
Email:   dtmoss@jonesday.com


**Jonathan D. King as Chapter 7 Trustee**
Attn:    John Lyons
Email:  john.lyons@us.dlapiper.com

Attn:    Robbin L. Itkin
Email:  robbin.itkin@us.dlapiper.com

Attn:    Jeffrey S. Torosian
Email:  jeffrey.torosian@us.dlapiper.com

Attn:    Joseph Roselius
Email:  joseph.roselius@us.dlapiper.com

**United States Trustee**

Attn:    Dare Law
Email:  dare.law@usdoj.gov

Attn:    Ron Maroko
Email:   ron.maroko@usdoj.gov

Attn:    Jill Sturtevant
Email:   jill.sturtevant@usdoj.gov

Attn:    Peter C. Anderson
Email:   peter.c.anderson@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                          **F 9013-3.1.PROOF.SERVICE**